**UNITED STATES of America ex rel. William J. MILLER, Petitioner-Appellant,**

**v.**

**Kenneth McGINNIS & Attorney General of the State of Illinois, Respondent-Appellee.**

**Nos. 83–3037, 84–2166.**

United States Court of Appeals, Seventh Circuit.

Argued May 21, 1985.

Decided Oct. 4, 1985.

Robert P. Burns, Northwestern University Legal Clinic, Chicago, Ill., for petitioner-appellant.

Jack Donatelli, Illinois Atty. Gen., Chicago, Ill., for respondent-appellee.

Before COFFEY and FLAUM, Circuit Judges, and WYATT, Senior District Judge.*

COFFEY, Circuit Judge.

The petitioner, William J. Miller, appeals from the decision of the district court granting his habeas corpus petition, and at the same time permitting the state of Illinois to vacate a portion of Miller's sentence rather than allowing Miller to withdraw his plea of guilty and enter a not guilty plea. Upon a review of the record, we affirm the district court's decision finding that Miller's constitutional rights were violated when the trial court failed to inform Miller of the Illinois mandatory supervised release term that must be served in addition to a sentence of incarceration. But because the record fails to convince us that Miller knowingly and voluntarily entered his plea of guilty, we reverse that part of the district court's decision allowing the state to vacate a portion of Miller's sentence, and remand the matter with instructions to issue the writ unless the Illinois court allows Miller to withdraw his previously entered plea of guilty and enter a plea of not guilty.

## I

William J. Miller was indicted in November 1979 for murder, attempted murder, attempted armed robbery and aggravated battery arising out of a series of events on October 22, 1979. On April 16, 1980, fol-

lowing a plea bargain conference, Miller, then seventeen years of age, appeared before the Circuit Court of Cook County, Illinois, withdrew his plea of not guilty, and entered a plea of guilty to all charges. Before accepting Miller's plea of guilty, the trial court informed Miller that the possible sentence for murder was twenty to forty years; for attempted murder and armed violence, six to thirty years; for attempted armed robbery, three to seven years; and two to five years for aggravated battery. At this time, the following colloquy took place:

> "THE COURT: As to each of these offenses, without murder being included, the Court can also impose what is called a mandatory supervised release period on you of up to a period of three years as to each of these—on each of these charges.
>
> Do you understand what you are charged with, and what the possible sentence is as to each of these charges?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: Do you understand that by pleading guilty to the charges, you will lose your Constitutional right to a jury trial, and/or, if you didn't wish to have a jury, you would lose your Constitutional right to a trial by the Court sitting without a jury.
>
> \* \* \* \* \* \*
>
> Is that what you wish?
>
> THE DEFENDANT: Yes.
>
> THE COURT: The [plea bargain] conference results in this matter ..., the Court being made aware of all the facts and the circumstances, and of your involvement in the circumstances leading up to this event, are that, on the crime of murder, you will receive a sentence of 20 years in the Illinois Department of Corrections.
>
> As to the attempt murder, you will receive a sentence of six years.

---

* The Honorable Inzer B. Wyatt, Senior District Judge of the Southern District of New York, is sitting by designation.

As to the offense of attempt robbery, you will receive a sentence of six years.

As to the offense of aggravated battery, you will receive a sentence of four years.

And as to the offense of armed violence, that will be a finding of not guilty.

Is that your understanding of the sentence that you will receive on your plea of guilty?

All of these sentences will be ordered to be served concurrently with one another.

THE DEFENDANT: Yes.

THE COURT: Is that what you understand—

THE DEFENDANT: Yes.

THE COURT: —you will receive on your plea of guilty?

THE DEFENDANT: Yes.

THE COURT: Let the record show, that the defendant has been duly warned of the consequences of his plea, and after being so warned, he persists.

And the record should further indicate, the Court has set forth in open court, on the record, the conference results, and will impose a sentence arrived at as a result of the conference."

After the prosecution and defense stipulated to facts sufficient to provide a factual basis to support the plea, the court accepted Miller's plea of guilty. On April 22, 1980, Miller appeared before the court at the sentencing hearing just six days after he had entered his plea of guilty, and his first words to the court were, "Your honor, may I say something. I would like to withdraw my plea, because I didn't quite understand the proceedings." The trial court, without allowing the defendant to explain or elucidate what he meant by his statement "I didn't quite understand the proceedings," and without giving any reasoning for its action, merely responded, "Denied. All right. Anything else?" Miller's attorney then indicated that Miller wished to retain a new attorney after sentencing. The court proceeded to sentence Miller and thereafter advised him, "you have thirty days within which to file a written ... petition setting forth sufficient legal reasons why you should be permitted to withdraw your plea of guilty." The court refused to delay incarceration to allow Miller to retain a new attorney. Miller failed to file a petition, but filed a notice of appeal to the Illinois Appellate Court.

The Illinois Appellate Court reached the merits of Miller's appeal, notwithstanding his failure to file the petition with the trial court, because:

"The trial judge not only failed to inform him of his right to appeal, but also failed to inform him that the written motion was a condition precedent to the defendant's right to appeal, and that failure to file the motion would waive any claim of error in the trial court proceedings."

*People v. Miller*, 107 Ill.App.3d 1078, 63 Ill.Dec. 712, 715–16, 438 N.E.2d 643, 646–47 (1982). The appellate court held that the trial court's failure to inform Miller that his sentence for murder included a three year mandatory supervised release ("MSR")[1] period, in addition to the twenty year sentence, did not deprive Miller of any "substantial constitutional right." The court reasoned that the twenty year sentence plus the three year mandatory release period was still considerably shorter than the possible forty year sentence that the defendant was told he could receive, and it was thus "most unlikely," given the nature of the crimes, that "knowledge of

---

**1.** Mandatory supervised release is the current term for what was formerly referred to as parole. Every felony sentence "shall include as though written therein a [mandatory supervised release] term in addition to the term of imprisonment." Ill.Rev.Stat. ch. 38, ¶ 1005–8–1(d). The MSR term imposed will range in length from 1 year for class 3 and class 4 felonies up to 3 years for murder and class x felonies. *Id.* Only the Illinois Prisoner Review Board may release and discharge an individual from MSR after evaluating his performance to determine whether he is likely to remain at liberty without committing another offense. Ill.Rev.Stat. ch. 38, ¶ 1003–3–8(b).

the parole term would be anything more than an academic factor in the defendant's decision to plead guilty." *Miller*, 63 Ill. Dec. at 718, 438 N.E.2d at 649, quoting *People v. Briner*, 57 Ill.App.3d 327, 328, 14 Ill.Dec. 902, 904, 373 N.E.2d 33, 35 (1978). The Illinois Appellate Court also ruled that the trial court's failure to admonish Miller that by pleading guilty he was waiving his privilege against self-incrimination and his right to confront witnesses was harmless error. *Miller*, 438 N.E.2d at 650. The Supreme Court of Illinois denied Miller leave to appeal the decision of the Appellate Court.

Miller then filed this habeas corpus petition with the district court. The district court found that the three year MSR term applicable to Miller constituted a substantial addition to the twenty year sentence he believed he had agreed to. Following our decision in *United States ex rel. Baker v. Finkbeiner*, 551 F.2d 180, 183 (7th Cir. 1977), the district court held that accepting Miller's guilty plea violated the Due Process Clause of the Fourteenth Amendment since Miller received a more onerous sentence than he had been told he would receive; the statutorily mandated MSR term effectively lengthened the sentence he had been told he would receive by three years. The district court disposed of the other alleged violations that occurred during the plea hearing by concluding that any other errors failed to rise to the level of constitutional violations, but were mere "technical violations" that did not require allowing Miller to withdraw his guilty plea. *United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979). Thus, according to the district court reasoning, the only constitutional violation was the trial court's failure to advise Miller that in addition to the twenty year sentence for murder to which he agreed, Miller would also face an MSR period of three years. Relying on *Santobello v. New York*, 404 U.S. 257, 263, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971),[2]

the district court ordered that a writ of habeas corpus issue to allow Miller to plead anew "unless, within 120 days, the state of Illinois [took] action to vacate that portion of [Miller's] sentence which imposed the mandatory supervised release term of three years, or to impose a lesser period of incarceration such that [Miller's] total sentence, including the mandatory supervised release term, [did] not exceed twenty years."

On February 29, 1984, the state of Illinois filed a "Show of Timely Compliance with Order of September 28, 1983" consisting of a copy of a letter from McGinnis, Miller's warden, explaining that Miller's sentence calculation sheet had been adjusted to ensure that Miller's twenty year term would include his MSR term. On March 9, 1984 Miller appeared before the district court on a motion to enforce final judgment, arguing that since the warden had no authority to vacate Miller's MSR term, the state had not complied with the conditions of the September 23, 1983 order, and a writ of habeas corpus should issue, thus allowing Miller to plead anew. The district court was not satisfied that the state had satisfied the conditions of its order, and on two separate occasions extended the time for the state to prove compliance with the September 23 order. On June 1 the state filed an affidavit of compliance of the chairman of the Prisoner Review Board, Paul Klincar, stating that he would assure the court that Miller would not serve longer than the twenty year term he had bargained for. On June 15, 1984, the district court denied Miller's motion to enforce final judgment. Miller now appeals both the September 23, 1983 order and the June 15, 1984 order, requesting that he be released or allowed to enter a new plea within a reasonable time.

## II

With respect to the September 23, 1983 order, Miller argues that his plea should be

2. In *Santobello* the United States Supreme Court found that a plea agreement had been violated by the state and, in fashioning the relief, remanded the case back to the state to either allow the defendant to plead anew or grant relief to insure that the terms of the plea agreement were met.

vacated and that he should be allowed to enter a new plea because the record as a whole fails to demonstrate that his plea was knowingly and voluntarily entered. Miller contends that "if the record as a whole does not leave the settled conviction that the plea was intelligently and voluntarily entered, that failing cannot be cured by allowing the state the option of enforcing that illegal plea bargain."

■ In *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the Supreme Court stated that before a court could pass judgment on whether a plea of guilty had knowingly and intelligently been entered, the facts must be "spread on the record." *Id.* at 242, 89 S.Ct. at 1711–12.

"What is at stake for an accused ... demands that the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure that he has a full understanding of what the plea connotes and of its consequence. When the judge discharges that function, he leaves a record adequate for any review that may later be sought."

*Id.* at 243–44, 89 S.Ct. at 1712–13. When, however, a defect in a plea proceeding is only a formal or technical violation, and "is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure," the court is not presented with such "exceptional circumstances" that the setting aside of a guilty plea is mandated. *United States v. Timmreck*, 441 U.S. 780, 783–84, 99 S.Ct. 2085, 2087–88, 60 L.Ed.2d 634 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)). Guided by these parameters, we consider the facts in the case before us.

■ The record discloses that the Illinois trial court failed to inform Miller that he would automatically receive an additional three year term of MSR following his incarceration and failed to advise Miller that by pleading guilty he waived the right to confront his accusers and the privilege against self-incrimination. Further, the record discloses that at the first opportunity following the entry of his guilty plea, Miller informed the court that he "didn't quite understand the [plea] proceedings." At the plea proceeding the trial court did advise Miller of the charges against him, the possible range of sentences for those charges, and the sentences agreed to in the plea conference. The trial court advised Miller that by pleading guilty, he would lose his right to trial by jury. Because the trial court failed to inform Miller of the three year MSR term, failed to advise him of the other constitutional rights he was giving up and failed to ascertain the reason for Miller's professed lack of understanding, the totality of the errors committed by the state trial court leads us to conclude that Miller's plea of guilty was not intelligently and voluntarily entered.

■ At the plea hearing, the court recited the crimes with which Miller was charged and the possible sentences for those crimes. The court then stated, "as to each of these offenses, without murder being included, the Court can also impose what is called a mandatory supervised release period on you up to a period of three years ... on each of these charges." The court then recited the sentences agreed to by Miller and the prosecutor in the plea conference, concurrent sentences of 20, 6, 6, and 4 years, with no mention of an MSR period for the crimes charged. Thus, it is clear from the record that before he pleaded guilty, Miller was told he would receive a maximum sentence of twenty years, when in fact, by operation of Illinois law, Miller's sentence included a three year MSR period in addition to the twenty year term announced by the trial court. Where the imposition of an MSR period results in a sentence that is substantially greater than the agreed upon sentence, the defendant's constitutional rights have been violated. *United States ex rel. Williams v. Morris*, 633 F.2d 71, 75 (7th Cir.1980), *vacated as moot sub nom. Lane v. Williams*, 455 U.S. 624, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982); *United States ex rel. Baker v. Finkbeiner*, 551 F.2d 180, 184 (7th Cir.

1977); *United States ex rel. Ferris v. Finkbeiner,* 551 F.2d 185, 186 (7th Cir. 1977), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1508, 55 L.Ed.2d 530 (1978). Thus, we agree with the conclusion of the district court that the imposition of a three year MSR period in addition to the agreed upon twenty year sentence violated Miller's right to due process.

The state trial court also failed to inform Miller that by pleading guilty he was waiving two very important and cherished constitutional rights: first, the right to confront one's accusers, and second, the privilege against self-incrimination. " 'A plea of guilty is more than a voluntary confession made in open court. It also serves as a stipulation that no proof by the prosecution need by [sic] advanced....' " *Boykin v. Alabama,* 395 U.S. 238, 242 n. 4, 89 S.Ct. 1709, 1711–12 n. 4 (quoting *Woodard v. State,* 42 Ala.App. 552, 558, 171 So.2d 462, 469 (1965)). "A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.' " *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1170–71, 22 L.Ed.2d 418 (1969) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). To ensure that a defendant waives only "known" rights or privileges, "[i]t is well-settled that any court accepting a guilty plea must first ascertain that the defendant is fully cognizant of the fundamental constitutional guarantees which are waived upon entry of the plea." *Sizemore v. District Court, 50th Judicial District, Boyle County, Kentucky,* 735 F.2d 204, 206 (6th Cir.1984). The Supreme Court in *Boykin v. Alabama* specifically stated, "We cannot presume a waiver of [the right to confront one's accusers and the privilege against self-incrimination] from a silent record." 395 U.S. 238, 243, 89 S.Ct. 1709, 1712; *see also Government of the Virgin Islands v. George,* 741 F.2d 643, 649 (3rd Cir.1984);

*Reeves v. Mabry,* 615 F.2d 489, 491 (8th Cir.1980). It is obvious that Miller did not and could not intentionally relinquish or abandon his right to confront his accusers or his privilege against self-incrimination since the trial court failed to advise Miller that he possessed the given right and privilege.

We also note that Miller was a mere seventeen years of age at the time he entered his plea and the record is barren of any indication of his having had any prior experience with the criminal justice system. At the next opportunity, six days later at sentencing, Miller's first words to the court were, "I would like to withdraw my plea because I didn't quite understand the proceedings." The court's only response was, "Denied." Since the trial court made no effort whatsoever to give the defendant an opportunity to explain his problem, much less explore on its own (the court's) the basis of Miller's professed lack of understanding, we cannot determine whether it was related to the crimes he was charged with, the sentence he was to receive, the MSR period, or some other aspect of the plea proceedings. Trial judges are well advised to be very meticulous and circumspect when advising all defendants of their rights at a plea hearing, but this is especially true when, as is the case here, the defendant is a seventeen year old juvenile with, according to the record before us, no prior experience in the criminal justice system. Furthermore, when a seventeen year old, or anyone, particularly those inexperienced in the criminal justice system, expresses a quick change of heart (attempting to change his plea six days later at the next opportunity before sentencing) and implores the court to allow him to withdraw his previously entered guilty plea, the trial court should be alert to the possibility that the plea was "entered in haste and confusion," and must explore the nature of the defendant's confusion to verify that the guilty plea is in fact intelligently and voluntarily entered. *Cf. United States v. Barker,* 514 F.2d 208, 222 (D.C.Cir.1974), *cert.*

*denied,* 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975).

 The district court dismissed these additional alleged errors, considering them to be mere "technical violations" as defined in *Timmreck,* and not rising to the level of constitutional violations. Accordingly, the district court determined that Miller's constitutional right to due process would be vindicated by allowing the state of Illinois to modify Miller's sentence to conform to the plea agreement. Were we to consider any one of these additional allegations of error in isolation, we might agree with the district court that they were mere "technical violations." *See, e.g., United States v. Dorszynski,* 484 F.2d 849, 850–51 (7th Cir. 1973), *rev'd on other grounds,* 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974) (failure to inform defendant concerning the waiver of the privilege against self-incrimination). But when we consider all of these shortcomings in the totality of the circumstances, we conclude that the plea proceedings, as a whole, were "inconsistent with the rudimentary demands of fair procedure," *Timmreck,* 441 U.S. at 783, 99 S.Ct. at 2087; *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1965), and that Miller's plea of guilty was not intelligently and voluntarily entered. Since we conclude that the flaw in the plea proceedings extends well beyond the failure of the trial court to advise Miller of the MSR period and rises to constitutional dimensions, we are left with no alternative but to conclude that the judgment pronounced by the district court allowing Illinois to modify Miller's sentence is inadequate and we conclude Miller must be allowed to enter a new plea.[3]

### III

The decision of the district court is affirmed with respect to the finding that the addition of the three year MSR term to the sentence Miller was advised he would receive violated Miller's constitutional right to due process of law and reversed with respect to the conclusion that apart from the failure to inform him of the MSR term, Miller's plea was intelligently and voluntarily entered. The case is remanded to the district court with instructions to issue a writ of habeas corpus, unless within 120 days, the state of Illinois vacates Miller's plea of guilty and allows him to plead anew.

---

**3.** Because of our holding that Miller must be allowed to plead anew, we do not reach the other issues raised on appeal concerning the district court's choice of and enforcement of a remedy.