**UNITED STATES of America, Plaintiff,**

v.

**Stanley HENRY, Defendant.**

**No. 88 CR 47.**

United States District Court,
N.D. Illinois, E.D.

May 11, 1989.

---

Anton R. Valukas, Stephanie L. Uhlarik, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Benjamin E. Starks, Starks and Associates, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

At the time relevant to this case 18 U.S. C.App. § 1202(a)(1) ("Section 1202(a)(1)") barred every convicted felon from being knowingly involved in any way with a firearm that had previously traveled in commerce—by receiving it, by possessing it or by transporting it. On August 31, 1988 a jury convicted Stanley Henry ("Henry") of having violated that statute on July 16, 1986.[1]

---

1. Since the July 16, 1986 date—the critical date for this case, because that was when Henry possessed the four handguns that were the subject matter of the indictment here—Section 1202(a) has undergone substantive changes and has also been placed elsewhere in the Criminal Code (18 U.S.C. §§ 922, 924). Among other changes, the sentence-enhancement provision now focused on by Henry was given broader application by expanding the types of prior convictions that will trigger its applicability. Ex post facto considerations protect Henry against

Section 1202(a) also mandated a minimum 15–year prison term (without parole) for any person who was convicted under the statute after having received three previous convictions for robbery or burglary.[2] Henry's presentence investigation report in this case reflects four prior Illinois robbery convictions (one of them was an armed robbery). Absent a taint in at least two of those convictions, Henry thus faces imposition of at least a 15–year custody sentence.

Henry has filed a motion to preclude use of three of the four prior convictions for enhancement purposes. For the reasons stated in this memorandum opinion and order, this Court concludes no evidentiary hearing is necessary and grants Henry's motion in part and denies it in part. However, the partial granting of the motion does not spare Henry from the statutory enhancement.

### Validity of the Challenged Convictions

Each of the three convictions now targeted by Henry was the product of a guilty plea:

1. a 1970 robbery conviction, Information Number 70–192;

2. a 1973 robbery conviction, Information Number 73–705;

3. a 1975 robbery conviction, Information Number 75–1482.

He now seeks to disavow those pleas on both constitutional and state law grounds:[3]

1. the pleas violated the Due Process Clause because they were neither voluntary nor intelligent; and

2. Illinois law was violated when the state courts failed to comply with Illinois Supreme Court Rule 402 ("Illinois Rule 402"), Ill.Rev.Stat. ch. 110A, ¶ 402.

Each plea will be considered in turn.[4]

### 1970 Robbery Conviction

1. Federal Constitutional Issues

*Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985), quoting *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970), provides clear guidance to courts asked to analyze a guilty plea:

The longstanding test for determining the validity of a plea is "whether the plea represents a voluntary and intelligent

---

application of those lowered standards for enhancement, and this opinion will of course limit its consideration to Section 1202(a).

**2.** *United States v. Jordan,* 870 F.2d 1310, 1314, n. 1 (7th Cir.1989) recites the relevant text of Section 1202(a)(1), as well as the complete Section 1202(a) enhancement provision. *Jordan* also outlines the later changes to the statute.

**3.** It has been two decades since our Court of Appeals first upheld the right of a defendant to challenge, in the context of a sentencing proceeding, the validity of a prior conviction that gives rise to enhancement of the sentence for the current offense (*United States v. Martinez,* 413 F.2d 61, 63–64 (7th Cir.1969)). Perhaps because the *Martinez* rationale rested on *Burgett v. Texas,* 389 U.S. 109, 115, 88 S.Ct. 258, 262, 19 L.Ed.2d 319 (1967), *Martinez* and the later similar cases of which this Court is aware have dealt with prior convictions that were *constitutionally* infirm rather than flawed for some lesser reason (such as, in the instance of a guilty plea, possibly the violation of state procedural rules that afford a defendant more protection than the minimum required by the Due Process Clause). For the reasons explained later in the text discussion of Henry's 1973 guilty plea, this

Court need not consider the question whether the principle of *Martinez* and its progeny should extend beyond an assertedly unconstitutional prior conviction.

**4.** Govt.Mem. 20–22 spends considerable effort arguing that Henry has the burden of establishing his convictions were constitutionally defective. Although Henry does not address this issue, its resolution is really quite simple. Of course the certified record of a conviction is prima facie evidence of its validity, so that Henry must submit some evidence demonstrating a defect. If that evidence poses a prima facie indication of constitutional error and the record is unclear, he may be entitled to an evidentiary hearing. If the record indicates Henry did not knowingly and intelligently waive his constitutional rights, the government has the obligation of establishing a valid waiver (cf. *United States ex rel. Grundset v. Franzen,* 675 F.2d 870, 877–78 (7th Cir.1982), applying a similar analysis to a habeas corpus petition). Here Henry's 1970 conviction is plainly flawed—the government cannot meet its burden of proving waiver. But on the remaining two convictions Henry has failed to establish prima facie evidence of a constitutional flaw to call the convictions into question.

choice among the alternative courses of action open to the defendant." [5]

*Hill* thus dictates a two-step inquiry:

1. Was the plea voluntary?
2. Was it intelligent?

As to the first of those *Jordan,* 870 F.2d at 1316, citing *Brady,* 397 U.S. at 755, 90 S.Ct. at 1472, puts the test this way:

> A guilty plea is voluntary when it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of the plea.

*Brady,* 397 U.S. at 749, 90 S.Ct. at 1469 also teaches that all relevant circumstances surrounding the plea must be considered. And *United States ex rel. Robinson v. Housewright,* 525 F.2d 988, 991–92 (7th Cir.1975) requires this Court to:

> base an analysis upon objective record facts rather than upon the defendant's recital of what he now claims were his subjective mental impressions.

But any application of the concept of voluntariness can await treatment later in this opinion, for Henry's 1970 plea fails the second inquiry mandated by *Hill* in any event: It was not "intelligent" in the legal sense. That conclusion merits a somewhat extended discussion.

*Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969) teaches a person who pleads guilty must be apprised of his or her waiver of several constitutional rights:

1. the privilege against compulsory self-incrimination,
2. the right to a jury trial and
3. the right to confront one's accusers.

To that end the record of any such plea must affirmatively disclose that the defendant entered his or her plea understandingly and voluntarily (*id.* at 242, 89 S.Ct. at

1711; *Brady,* 397 U.S. at 747 n. 4, 90 S.Ct. at 1468 n. 4). And "the question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards" (*Boykin,* 395 U.S. at 243, 89 S.Ct. at 1712).

What then must a court explain to a defendant to render his or her plea an "intelligent choice among the alternative courses of action open to the defendant" (*Hill,* 474 U.S. at 56, 106 S.Ct. at 369)? *Boykin* expressly says the court must warn the defendant, on the record, that pleading guilty means a waiver of the privilege against self-incrimination, the right to jury trial and the right to confront one's accusers. In literal terms that suggests no guilty plea can stand unless the court complies with that procedure.

*United States ex rel. Miller v. McGinnis,* 774 F.2d 819, 824 (7th Cir.1985) has delivered much the same message:

> The state trial court also failed to inform Miller that by pleading guilty he was waiving two very important and cherished constitutional rights: first, the right to confront one's accusers, and second, the privilege against self-incrimination. " 'A plea of guilty is more than a voluntary confession made in open court. It also serves as a stipulation that no proof by the prosecution need by [sic] advanced....' " *Boykin v. Alabama,* 395 U.S. 238, 242 n. 4, 89 S.Ct. 1709, 1711–12 n. 4 (quoting *Woodard v. State,* 42 Ala.App. 552, 558, 171 So.2d 462, 469 (1965)). "A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.' "

---

**5.** [Footnote by this Court] *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970), adopting and quoting Judge Tuttle's test in *Shelton v. United States,* 242 F.2d 101, 115 (5th Cir.1957) (citations and footnote omitted), is to the same effect:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by

the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1170–71, 22 L.Ed. 2d 141 (1969) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). To ensure that a defendant waives only "known" rights or privileges, "[i]t is well-settled that any court accepting a guilty plea must first ascertain that the defendant is fully cognizant of the fundamental constitutional guarantees which are waived upon entry of the plea." *Sizemore v. District Court, 50th Judicial District, Boyle County, Kentucky,* 735 F.2d 204, 206 (6th Cir.1984). The Supreme Court in *Boykin v. Alabama* specifically stated, "We cannot presume a waiver of [the right to confront one's accusers and the privilege against self-incrimination] from a silent record." 395 U.S. 238, 243, 89 S.Ct. 1709, 1712; *see also Government of the Virgin Islands v. George,* 741 F.2d 643, 649 (3rd Cir.1984); *Reeves v. Mabry,* 615 F.2d 489, 491 (8th Cir.1980). It is obvious that Miller did not and could not intentionally relinquish or abandon his right to confront his accusers or his privilege against self-incrimination since the trial court failed to advise Miller that he possessed the given right and privilege.[6]

But other authority (including, it will be seen, the Supreme Court itself) does not appear to call for literal conformity to *Boykin.* Thus most recently *Jordan,* 870 F.2d at 1316, citing *Brady,* 397 U.S. at 756, 90 S.Ct. at 1473, has painted with a broader brush:

> A guilty plea is intelligent and knowing when the defendant is competent, aware of the charges, and advised by competent counsel.

Neither *Jordan* nor *Brady* seems to require the specific admonitions detailed in *Boykin.* However, it may be a mistake to make too much of those cases' more simplified statements—it may be that they and *Alford,* 400 U.S. at 29 n. 3, 91 S.Ct. at 163 n. 3 presented no *Boykin* issue and therefore simply presumed compliance with *Boykin.*

But what must be regarded as far more persuasive is the view of *Boykin* and the constitutional prerequisites to a valid guilty plea expressed by the authors of that opinion—the Supreme Court itself. Some five years post-*Boykin* the Supreme Court proposed an amendment to Fed.R.Crim.P. ("Rule") 11 to prescribe what advice must be given a federal defendant as a precondition to a guilty plea. Its proposal in relevant part required only this (H.R.Rep. No. 94–247, 94th Cong., 1st Sess. 21–22 (1975) U.S.Code Cong. & Admin.News 1975, p. 674):

> (c) Advice to defendant.—The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
>
> \* \* \* \* \* \*
>
> (3) that the defendant has the right to plead not guilty, or to persist in that plea if it has already been made; and (4) that if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial.

Nor can that proposed version be viewed as an oversight as to *Boykin*'s teaching. Instead the Advisory Committee Notes to the Supreme Court's version stated the amendments were "designed to satisfy the requirements of understanding waiver set forth in *Boykin* "[7] and went on to say:

> Subdivision (c)(3) is intended to require that the judge inform the defendant and

---

6. See Appendix.

7. Not surprisingly, *Boykin* itself (395 U.S. at 243 n. 5, 89 S.Ct. at 1712 n. 5) had drawn in part from the Supreme Court's discussion just two months earlier of the requirements of then-existing Rule 11, in the course of which the Court had identified the same three constitutional rights adverted to in *Boykin* and then repeated the principle that a valid waiver must be "an intentional relinquishment or abandonment of a known right or privilege" (*McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 1418 (1969), quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).

determine that he understands that he waives his fifth amendment rights. The rule takes the position that the defendant's right not to incriminate himself is best explained in terms of his right to plead not guilty and to persist in that plea if it has already been made. This is language identical to that adopted in Illinois for the same purpose. See Illinois Supreme Court Rule 402(a)(3).... Subdivision (c)(4) assumes that a defendant's right to have his guilt proved beyond a reasonable doubt and the right to confront his accusers are best explained by indicating that the right to trial is waived. Specifying that there will be no future trial of any kind makes this fact clear to those defendants who, though knowing they have waived trial by jury, are under the mistaken impression that some kind of trial will follow. Illinois has recently adopted similar language. Illinois Supreme Court Rule 402(a)(4).... In explaining to a defendant that he waives his right to trial, the judge may want to explain some of the aspects of trial such as the right to confront witnesses, to subpoena witnesses, to testify in his own behalf, or, if he chooses, not to testify. What is required, in this respect, to conform to *Boykin* is left to future caselaw development.

That could scarcely be more plain. It says a court can comply with *Boykin* in an abbreviated rather than a literal way, by explaining to the defendant:

> 1. that he or she has the right to plead not guilty or to persist in that plea, and
>
> 2. that he or she waives his right to trial by pleading guilty.

It reflects a belief that such advice subsumes the other two specific rights that *Boykin* had identified as part of the irreducible minimum. Moreover, to speak of the more specific admonitions as matters "the judge *may want* to explain" is scarcely a message that the Constitution mandates those specific admonitions as a condition precedent to the validity of a guilty plea. And the reference to "future case-law development" can be fairly read only as a statement that, as of the time of the proposed Rule amendment, the Supreme Court did not perceive the *Boykin* itemization of rights as a constitutional minimum so long as the more general language of the Supreme Court's proposal was complied with.

To be sure, the language of Rule 11(c) as finally adopted went farther, not only to but beyond the assurances particularized in *Boykin:*

> (c) **Advice to Defendant.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
>
> \* \* \* \* \* \*
>
> (3) that the defendant has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, and the right against compelled self-incrimination; and
>
> (4) that if a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial....

That was done in conformity with the recommendations emanating from the House of Representatives Judiciary Committee (see H.R.Rep. No. 94–414, 94th Cong., 1st Sess. 9 (1975) U.S.Code Cong. & Admin. News 1975, p. 713, reflecting that the Conference Committee was adopting the more expanded House provision rather than the Senate's concurrence in the Supreme Court's original proposal).

But no inference of constitutional dimension may be drawn from that sequence of events. Although Congress is of course free to expand the warnings that federal courts must give before accepting a guilty plea, it would obviously do violence to fundamental separation-of-powers principles to find that Congress was suggesting the Supreme Court's more abbreviated version was constitutionally inadequate.

■ Because the Supreme Court's original proposal—promulgated after *Boykin*—must be read as defining the *constitutionally* required minimum warnings, it is only reasonable to conclude that a state court speaking to a defendant (at least during that general time frame) had to explain only (1) that he or she had the right to plead not guilty and (2) that if he or she did so, that would waive the right to a trial. It is now time to analyze Henry's 1970 plea in those terms.

■ According to the description of Henry's prior criminal record contained in the current presentence report, his 1970 conviction was his first contact with the criminal justice system as an adult.[8] When Henry and his codefendant appeared before the court on February 16, 1970, the following colloquy took place (Henry Mem.App. B, at 2-4):

> THE COURT: All right, is [sic] that being the case, leave is granted to the State to file the Information, as to Larry Johnson and Jerome Jordan,[9] charging each of the defendants with the crime of robbery. To that charge, do each of you, first Larry Johnson and second Jerome Jordan, do each of you wish to enter a plea of guilty, at this time?
>
> MR. JOHNSON: Yes, guilty.
>
> MR. JORDAN: Yes, your Honor, guilty.
>
> THE COURT: Before I accept your plea of guilty, both Johnson and Jordan, listen to the Court for a moment. Do you both understand that these are felony charges and as such, you both have a Right to a preliminary hearing. If you did not enter a plea of guilty, you would have a Right to have this matter heard by this Court. If this Court found there was sufficient evidence to find probable cause, this Court would then send the matter to the Grand Jury for a possible indictment. If the Grand Jury found

there was enough evidence, they would vote for a true bill and if there wasn't enough evidence, they would then vot [sic] for a no bill and you would be then discharged. On the other hand, if they voted for a true bill, you would then have a Right to have a trial by a Judge or Jury. Do each of you know what a Jury Trial is?

> MR. JOHNSON: Yes.
>
> MR. JORDAN: Yes.
>
> THE COURT: Both of you understand that you have that Right and both of you want to give up that Right and plead guilty before me?
>
> MR. JOHNSON: Yes, your Honor.
>
> MR. JORDAN: Yes, your Honor.

Although the judge thus did explain Henry was waiving his right to a trial (subparagraph (c)(4) of the Supreme Court's Rule 11 proposal), he did not in terms advise Henry of his right to plead not guilty (subparagraph (c)(3) of the same proposal). Even under the minimalist reading of *Boykin* reflected in that proposal, then, the court's admonitions were deficient. And it will be recalled that Henry was facing his first criminal conviction—his first experience with the criminal justice system. Surely he could not be charged with knowledge of the *Boykin*-prescribed rights.

In short, the 1970 conviction calls for application of *Boykin*'s teaching that no waiver can be presumed from a silent record (395 U.S. at 243, 89 S.Ct. at 1712). Because Henry's plea was not "intelligent" in the constitutional sense, it involved a violation of due process. It cannot be used for sentencing enhancement purposes.

### 2. State Law Issues

In light of the just-announced ruling, any arguable invalidity of Henry's plea on state law grounds would add nothing to the result.[10] Accordingly, discussion of those

---

8. Henry admitted an earlier juvenile arrest record, though the probation officer was unable to verify that in the presentence report.

9. [Footnote by this Court] Henry's affidavit says he is also known as Jerome Jordan, the name by which he is referred to in the 1970 transcript.

There is no dispute that Henry was in fact a defendant in that case.

10. That is true for a second reason as well, for Illinois Rule 402 would not apply to Henry's 1970 plea in any case. Henry pleaded guilty on February 16, 1970, while Illinois Rule 402 did

state-law issues will be deferred to the next section of this opinion.

### *1973 Robbery Conviction*

#### 1. Federal Constitutional Issues

■ When the analysis of the preceding section is applied to the record of Henry's 1973 plea, there is no question that the plea qualifies as both knowing and intelligent. This Court has reviewed both the transcript and Henry's affidavit and finds no constitutional defect exists:

1. Henry was given a copy of the criminal information, and the court explained both the charge and the potential penalty (Henry Mem.App. C, at 2–4).

2. In addition, the state judge explained that by pleading guilty Henry waived his right to a jury trial, to confront witnesses and to indictment by a grand jury (*id.* at 4–5). Henry said he understood those rights and wished to waive them (*id.* at 5).

3. Henry was also told he had a right to plead not guilty (*id.* at 4).

4. Henry then said he had received no threats of force or promises (*id.* at 7).

5. Finally, the factual basis for the plea was set forth on the record and Henry's attorney stipulated to the facts and to Henry's age (*id.* at 7–8).

That thorough exposition of Henry's rights (lacking only mention of his privilege against self-incrimination, which the Supreme Court's proposed version of Rule 11 treated as purely optional in conjunction with advising the defendant of his or her right to a trial) essentially dooms any possible claim that his plea was anything other than voluntary and intelligent.[11] After all, when the Supreme Court itself has proposed a form of advice drawn directly from Illinois Rule 402, and a state court judge has complied so completely with that Rule,

this Court would be loath to reject that compliance as constitutionally insufficient. Nonetheless, two aspects of Henry's claim require more extended discussion.

First, Henry says his plea was not intelligent because he was denied effective assistance of counsel. In assessing a similar claim, *Jordan*, 870 F.2d at 1318, said (citing *Hill*, 474 U.S. at 59, 106 S.Ct. at 370):

The guilty plea will stand unless (1) counsel's performance fell below an objective level of reasonable conduct and (2) the defendant would not have pleaded guilty but for counsel's incompetence.

Henry must overcome a "strong presumption that his counsel met an objective level of competence" (*id.*). Bare allegations that counsel failed to advise him will not constitute sufficient evidence to support his claim (*id.*).

Under those principles Henry must fail, for he has presented no *evidence* to overcome the presumption of competence. His Aff. ¶¶ 3–4 state:

1. He saw his lawyer only once—on the day he went to court—for 10–15 minutes.

2. He told the attorney he was innocent, but his lawyer "didn't want to discuss the facts."

3. He told his lawyer he did not want to plead guilty, but his attorney said he had to plead or the codefendants "couldn't get the deal."

4. His lawyer never wanted to go to trial.

But those are only bare allegations, which *Jordan* says will not do the job. By contrast, the objective record evidence reflects no ineffective assistance. There was a clear factual basis for Henry's plea. Furthermore, Henry received a favorable sentence—five years' probation. It certainly appears a plea bargain was a reasonable

not become effective until September 1 of that year.

11. Another factor cutting against Henry's attack on the 1973 plea is that this was not his first experience with the criminal justice system: This case's presentence report shows nine ar-

rests and three convictions between the 1970 and 1973 pleas. *Marshall v. Lonberger*, 459 U.S. 422, 437, 103 S.Ct. 843, 852, 74 L.Ed.2d 646 (1983) teaches a defendant's "experience in the criminal justice system" is a relevant factor in the voluntariness inquiry.

decision for a person in Henry's position.[12]

In short, it cannot be said counsel's performance fell below an objective level of competence (see, e.g., *United States v. Teller*, 762 F.2d 569, 575–76 (7th Cir.1985), quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)). Henry's first added line of attack has failed.

Henry Mem. 10 also raises the possibility of a conflict of interest stemming from the same attorney's representation of him and his two codefendants. While a demonstrated conflict of interest would indeed support an ineffective assistance claim (see generally *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)), Henry's evidentiary submissions do not come even close to establishing an actual conflict. Instead he simply asserts his denial of guilt should have put the attorney on notice that a conflict existed (Henry Mem. 10). That will not suffice, for as stated in *Robinson*, 525 F.2d at 994, quoting *United States v. Mandell*, 525 F.2d 671, 677 (7th Cir.1975):

> [W]e believe that it is incumbent upon the defendants to demonstrate, with a reasonable degree of specificity, that a conflict of interest actually existed at trial.

Thus *Robinson* explicitly required "something more than a possible conflict of interest" (*id.*). Yet Henry provides no evidence of actual conflict.

In sum, the totality of the circumstances demonstrates Henry's 1973 plea was both voluntary and intelligent. It is affirmatively shown by the record that he was advised by competent counsel, informed of his rights and warned of the consequences of his plea. He was familiar with the criminal process, and there was no evidence he himself was incompetent. Finally, there is no evidence of coercion or any improper prom-

ises. All Henry's constitutional challenges to that plea are rejected.

### 2. State Law Claims

■ Henry has also challenged his guilty pleas under Illinois Rule 402. As the earlier-quoted Advisory Committee Notes on the proposed 1974 amendments to Rule 11 state, Illinois Rule 402 closely parallels the United States Supreme Court's proposed version of the federal rule. Indeed the two rules differed only in Illinois Rule 402(a)(4)'s specific inclusion of a requirement that the defendant be advised of the right to confront adverse witnesses.

This opinion's earlier discussion has demonstrated that difference has no significance in federal constitutional terms. As already pointed out, the Advisory Committee Notes said Rule 11(c)(4) "assumes that a defendant's ... right to confront his accusers [is] best explained by indicating that the right to trial is waived."[13] And that being so, there is no constitutional flaw in a guilty plea preceded by an admonition either in the terms specified by the originally proposed version of Rule 11(c) or in the somewhat more elaborate terms of Illinois Rule 402.

But what of the state law status of a guilty plea entered after a trial court's advice that conforms to the originally proposed 1974 version of Rule 11(c) but does *not* go on to comply with some aspect of Illinois Rule 402(a)? That problem is not posed by the 1973 plea, which tracks almost verbatim every element of the Illinois Rule. But because there is some deviation between the Illinois Rule's requirements and what was explained to Henry before his 1975 plea, and because the discussion of the comparative federal constitutional demands and those in the Illinois Rule has

---

**12.** Henry Mem. 13 does point to a minor discrepancy between the information (Henry Mem. App. E) and the statement of facts put into the record by the prosecutor (Henry Mem.App. C, at 7). According to the information Henry took $50, a pair of brown shoes, a yellow jacket and a yellow hat, while the prosecutor said the defendants took $5 and a yellow hat. Whatever

the reason for that minor disparity, it does not bespeak ineffective assistance of counsel.

**13.** And as has already been pointed out as to the 1973 plea, the Notes convey the same message regarding the privilege against self-incrimination.

been begun here, it seems most desirable to complete that discussion now.

Any potential difference between the two sets of requirements is effectively erased by (1) the fact that Illinois Rule 402 demands only "substantial compliance" with its terms and (2) the consistent reading the Illinois courts have given the concept of "substantial compliance." Case after case in Illinois has held "strict, literal adherence to every word" of Rule 402 is not necessary (*People v. Lee*, 33 Ill.App.3d 45, 48, 337 N.E.2d 381, 383 (1st Dist.1975), citing *People v. Mendoza*, 48 Ill.2d 371, 373–74, 270 N.E.2d 30, 32 (1971)).[14] *People v. Krantz*, 58 Ill.2d 187, 193, 317 N.E.2d 559, 563 (1974), quoting *People v. Doyle*, 20 Ill.2d 163, 167, 169 N.E.2d 250, 252 (1960), states this standard for evaluating whether a trial court has substantially complied with Rule 402:

> [T]he remarks and advice of the court must be read in a practical and realistic manner. The essentials have been complied with if an ordinary person in the circumstances of the accused would understand them as conveying the information required by the rule.[15]

Nothing in the Illinois cases suggests that an Illinois court would apply a more demanding standard than that expressed in the Advisory Committee Notes. And that in turn means a plea that passes constitutional muster will also represent "substantial compliance" with Illinois Rule 402. Thus the state law inquiry really collapses into the constitutional analysis, and Illinois Rule 402 adds nothing substantive to Henry's rights.[16]

**14.** See also such cases as *People v. Chiavola*, 30 Ill.App.3d 728, 332 N.E.2d 519 (1st Dist.1975) (per curiam) (abst.); *People v. Walker*, 21 Ill.App.3d 759, 761, 316 N.E.2d 138, 139 (1st Dist. 1974); *People v. Battie*, 19 Ill.App.3d 806, 313 N.E.2d 203 (1st Dist.1974) (abst.).

**15.** [Footnote by this Court] Accord, *Walker*, 21 Ill.App.3d at 761, 316 N.E.2d at 139:

> In reviewing the admonitions of the trial court to the defendant, a common sense approach must be taken to determine whether there has been substantial compliance with the provisions of the Rule.

**16.** As suggested in n. 3, that moots the question whether *Martinez* and like cases call for a feder-

*1975 Robbery Conviction*

1. **Federal Constitutional Issues**

██ Henry makes the same three attacks on his 1975 plea:

1. He did not understand what he was doing.

2. He was denied effective assistance of counsel.

3. His attorney had a possible conflict of interest.

Application of the same analysis as in the preceding section produces the same conclusion of a voluntary and intelligent plea. This time the record discloses:

1. Henry was represented by counsel.

2. Once again the court explained the charge and the possible penalty (Henry Mem.App. D, at 6).

3. Henry withdrew his previous plea of not guilty and entered his plea of guilty after being warned of a number of constitutional rights (*id.* at 7–8):

THE COURT: Do each of you understand that by pleading guilty to the reduced charge each of you are loosing [sic] your constitutional privilege to have the charge heard by a jury or to have the Court hear the charge without a jury; and each of you are also loosing [sic] your constitutional privilege to demand that the State bring all of the witnesses who would testify against each of you into open Court, and have those witnesses confront each one of you, and after being sworn, testify in your presence and hearing and be subjected to cross examination by your counsel.

al court to reject, as a source of sentence enhancement, a state conviction that appears vulnerable only on state law grounds but has not been the subject of prior attack by defendant, either via direct appeal or by state postconviction proceedings (of course federal habeas corpus would not be available for that purpose). Any such extension of the *Martinez* principle would appear to pose serious questions of exhaustion of remedies or waiver or what has become known as "Our Federalism"—or perhaps a combination of those problems. As already stated, this opinion will not indulge any analysis along those lines.

Mr. Stanley Henry, do you understand that you lose each one of those constitutional rights by pleading guilty to this indictment?

DEFENDANT STANLEY HENRY: Yes.

4. Henry confirmed that no threats or promises had been made (*id.* at 8).

5. After sentencing the court explained his right to appeal or to withdraw his plea (*id.* at 13–14).

Henry makes no claim that his plea was involuntary, nor would the evidence support such a claim.[17] And plainly the record demonstrates the plea was intelligent. Before the counsel-related claims are addressed briefly, only one variant on the earlier cases calls for an equally quick look.

Henry was never told in haec verba of his right to plead not guilty (and thereby his privilege against self-incrimination). But in this instance Henry had *already* pleaded not guilty and then decided to change his plea. All the court's admonitions came as warnings of the rights he would give up by such a *change* from a not guilty to a guilty plea. In those circumstances it would be absurd to invalidate his guilty plea on the basis that he was unaware of his right to plead not guilty. Once more the totality of the circumstances dictates the conclusion that Henry's plea was intelligent.

Henry's ineffective assistance claims (including the alleged conflict) fail for the same reasons as in the 1973 plea. Again he has presented no *evidence* to overcome the presumption of competence, no *evidence* of prejudice, no *evidence* of an actual conflict. This Court has reviewed the evidence and rejects Henry's challenges.

### Conclusion

This opinion's analysis of Henry's claim has been much extended by the problems posed by *Boykin* and whether it should be read in literal terms (as this Court would have been inclined to do, left to its own devices) or in the less demanding way that appears to be called for by the Supreme Court's own proposed approach to that case. It is plain that a defendant pleading guilty must be warned expressly of constitutional rights he is waiving, but it is not at all plain precisely what form that warning must take to pass constitutional muster.

Though the result may be arguable, this Court concludes that Henry failed to receive even the minimum necessary warnings during his 1970 plea. As a result that conviction violated due process and will not be considered for sentencing enhancement purposes.

Henry's 1973 and 1975 pleas would be similarly flawed under a straight-on application of the *Boykin* language calling for specific identification of the waivers of the privilege against self-incrimination, the right to jury trial and the right to confront adverse witnesses. Neither trial court adverted to all three of those in the course of taking Henry's guilty plea. It is only by accepting the less literal mandate proposed by the Supreme Court in its own definition of what a court must do to assure a valid guilty plea (and of course by accepting the notion that the Supreme Court would not direct unconstitutional conduct by the federal district courts) that Henry's 1973 and 1975 pleas become invulnerable to constitutional attack. Once that hurdle is overcome, the challenges posed by Henry must be rejected as without legal merit.

There is a wide gulf between the alternatives posed in this case—between the *maximum* of a two-year prison sentence if no enhancement is present and the *minimum* of a 15–year prison term (without the possibility of parole) if enhancement applies. Understandably the latter bleak prospect has triggered the current motion. And Henry is entitled to no less consideration because his lengthy criminal record portrays a recidivist from whom society ought to be protected by extended incarceration. In an important sense, the best test of our justice system is how it treats individuals

---

17. By way of information, by this time Henry had been arrested twice more since the 1973 conviction and had also pleaded guilty to a charge of possession of a controlled substance (see n. 11).

who appear to be least deserving of its protections.

Although the issue is scarcely free from doubt, this Court concludes the Supreme Court has told us *Boykin* is not to be given its literal reading. In those terms no evidentiary hearing is necessary to conclude that Henry's 1970 conviction may not be considered, but his 1973 and 1975 convictions may be, for sentence enhancement purposes. That renders Henry a three-time loser under Section 1202(a), and he will be sentenced accordingly.

### APPENDIX

Our Court of Appeals' application of *Boykin* in *United States ex rel. Miller v. McGinnis*, 774 F.2d 819 (7th Cir.1985) bears somewhat more detailed scrutiny that, if included in the text of this opinion, would either break the flow of its analysis or call for an extended multiparagraph footnote. Accordingly it has been set out separately in this Appendix.

Our Court of Appeals found the plea in *Miller* was flawed because of failures by the state court:

1. to tell Miller he faced a three-year mandatory supervised release period following his incarceration;

2. to inform him of his waiver of the constitutional rights outlined in the text at n. 6; and

3. to ascertain the reason for his professed lack of understanding of his plea.

At the outset *Miller, id.* at 823 noted that mere "technical violations" in a plea proceeding would not justify setting aside the guilty plea, citing *United States v. Timmreck*, 441 U.S. 780, 783–84, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979) for that proposition. Then *Miller, id,* at 825 (citations omitted) applied its view of *Timmreck* to the three just-identified errors:

Were we to consider any one of these additional allegations of error in isolation, we might agree with the district court that they were mere "technical violations." ... But when we consider all of these shortcomings in the totality of the circumstances, we conclude that the

plea proceedings, as a whole, were "inconsistent with the rudimentary demands of fair procedure ... and that Miller's plea of guilty was not intelligently and voluntarily entered.

At least impliedly, that might be read to suggest a state court's failure only to have followed *Boykin*'s admonitions literally *might* not justify setting aside Henry's plea—that is, that a "harmless error" type of analysis might be appropriate. But the difficulty with that approach lies in *Timmreck* itself, which would not in terms appear to establish such a "harmless error" standard in Henry's situation.

*Timmreck*, 441 U.S. at 783–84, 99 S.Ct. at 2087 does indeed say that failure to follow the dictates of Rule 11 precisely would not automatically taint a plea. After all, Rule 11 is not constitutionally mandated (*McCarthy*, 394 U.S. at 464–65, 89 S.Ct. at 1169–70; *Grundset*, 675 F.2d at 877 n. 8). But *Timmreck*, 441 U.S. at 783–84, 99 S.Ct. at 2087 approved the "harmless error" type analysis *only* because:

Such a violation is neither constitutional nor jurisdictional.

By contrast, any failure to comply with the *Boykin* command (at least as the Supreme Court may be viewed as having defined it in the Court's proposed 1974 revision of Rule 11) would indeed be a constitutional error—a violation of due process. Hence, it would seem any "harmless error" approach drawn from *Timmreck* would be of doubtful applicability to Henry's situation. This opinion has therefore not counted on the "harmless error" dictum from *Miller* quoted in this Appendix as a factor in deciding this case.