UNITED STATES of America,
Plaintiff–Appellee,

v.

Stanley HENRY, Defendant–Appellant.

No. 89–2054.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 26, 1990.

Decided May 29, 1991.

Thomas M. Durkin, Asst. U.S. Atty. and Patrick B. Murray, Office of the U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Benjamin E. Starks, Starks & Associates, Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, and CUMMINGS and RIPPLE, Circuit Judges.

BAUER, Chief Judge.

In late June of 1986, a man walked into the Oak Park, Illinois, Police Department and told Officer Patrick Lawton that one Stanley Henry had cocaine for sale. The officer asked the man if he would be willing to make a controlled purchase of cocaine from Henry, and the informant agreed. The deal never went down be-cause on the day of the buy, Henry was not at home. On July 8, 1986, the same citizen informant returned and told Lawton and Officer Leonard Jorgensen he had been a guest in Apartment J-1, 939 West Washington Boulevard in Oak Park, Illinois, and that the residence belonged to Stanley Henry. After giving the officers vital information about himself, including his birth date and phone number, the man stated that he had known Henry for a year and a half, and that he had heard from a third party that Henry had spent time in the penitentiary for armed robbery. The informant related that he had been in Henry's apartment on at least ten prior occasions and had seen guns. He described a July 4, 1986, visit during which Henry pointed a loaded, chrome-plated revolver at him.

The officers attempted to verify as much as possible the information supplied by the informant. First, they ran criminal history checks. The check on the informant revealed two arrests, one a traffic violation, and the other for misdemeanor theft. Neither resulted in a conviction. The criminal history check on Henry showed that he had an extensive criminal background, including a conviction for armed robbery in 1978. The officers obtained a Chicago arrest photo of Henry from police files. The officers also called the Illinois Bell Telephone Company to verify that a Stanley Henry lived at 939 W. Washington in Oak Park, Illinois. They were told that the number was unpublished. Officer Jorgensen then went to the Washington Street address and personally checked the name listed on the mail box for Apartment J-1. It read "Stanley Henry."

When Jorgensen returned to the police station, he and Lawton completed a complaint for a search warrant. The officers then arranged another meeting with the citizen informant. They showed him a photo spread consisting of Henry's police file photo and pictures of other individuals who resembled Henry. The informant immediately picked out Henry's photograph and correctly identified it. The informant also verified the information contained in the search warrant complaint. The officers

marched the complaint for the search warrant over to the Fourth District State's Attorney's Office, where it was approved. They then took the complaint to Circuit Court Judge John M. Sorrentino, who issued a search warrant. On July 11, 1986, Lawton and Jorgensen, along with several other police officers, executed the warrant. The search of Henry's apartment turned up two Smith and Wesson revolvers (one chrome-plated), a Beretta, a .357 Magnum, ammunition, four pieces of proof of residency, and a pair of handcuffs. The officers placed Henry under arrest.

In January 1988, a grand jury returned an indictment against Henry, charging him under 18 U.S.C. § 922(g)(1), which makes it unlawful for a convicted felon to receive a firearm or ammunition that has been shipped or transported in interstate or foreign commerce. A superseding indictment added a charge under 18 U.S.C. app. § 1202(a)(1), which mandates a minimum fifteen-year prison term (without parole) for any person who is convicted under section 922(g) after three previous convictions for robbery or burglary. Henry was convicted of robbery in the Circuit Court of Cook County, Illinois, four times: in 1970, 1973, 1975, and 1978. Prior to trial, the government notified Henry that it intended to prove these convictions for purposes of enhanced sentencing.

Henry filed a motion to quash the search warrant, suppress the evidence, and quash the arrest. Pursuant to *Franks v. Delaware*, 438 U.S. 154, 156, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978), an evidentiary hearing was held. Henry failed to establish by a preponderance of the evidence that a false statement necessary to the finding of probable cause knowingly and intentionally, or with reckless disregard for the truth, was included in the warrant affidavit. Henry then was tried before a jury and found guilty. In his post-trial motion for a new trial, he argued that the district court erred in denying his motion to suppress the evidence and quash the arrest and in disallowing his attorney to inquire as to the identity of the citizen informant. He also contended that he was prevented from presenting evidence relative to the validity of the complaint for the search warrant. In addition, Henry argued that the enhancement provision of section 1202(a)(1) should not have kicked in because his prior convictions were based on defective pleas. The district court denied Henry's post-trial motion, although it later found that the state trial court had not admonished Henry properly at the time of his 1970 plea. With regard to the other three convictions, however, the district court carefully culled the transcripts of the 1973, 1975, and 1978 sentencing hearings and found ample evidence to destroy Henry's varied challenges to the proceedings: ineffective assistance of counsel, attorney conflict of interest, and lack of awareness of the right to plead not guilty. Henry thus was not spared the sting of section 1202(a)(1)'s "third strike" provision. On May 12, 1989, the district court sentenced Henry under that provision to twenty years in prison.

In this appeal, Henry attacks several aspects of his conviction and sentence. His first contention revisits his argument that the trial court erred in denying his motion to quash the search warrant, suppress the evidence, and quash the arrest. He asserts that the affidavit in support of the search warrant contained known falsehoods that were included intentionally or with a reckless disregard for the truth. In particular, Henry thinks it peculiar that the Oak Park police failed to follow up on the citizen informant's tip that Henry was in possession of cocaine after the aborted controlled purchase. He also considers it odd that the informant waited four days to report the July 4 gun incident. He believes that these facts demonstrate that the information upon which the warrant was issued was unreliable and that the officers "figured a way to search [Henry's apartment and] then prefabricated this so-called citizen informant and the information placed in the affidavit for a search warrant." Appellant's Brief at 16.

■ Henry has an almost insurmountable task before him. We will not overturn a trial court's denial of a motion to suppress unless it is clearly erroneous. *Unit-*

ed States v. McNeese, 901 F.2d 585, 592 (7th Cir.1990) (citation omitted). A finding is "clearly erroneous" when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* To make this determination, we review the sufficiency of the affidavit independently. *United States v. McKinney,* 919 F.2d 405, 413 n. 9 (7th Cir.1990).

■ We indicated in *United States v. A Residence Located at 218 3rd St.,* 805 F.2d 256, 258 (7th Cir.1986), that when a defendant challenges the affidavit in support of a search warrant as including false statements that were included knowingly and intentionally or with reckless disregard for the truth, the standard is analogous to the standard for "reckless disregard for the truth" in First Amendment cases involving libel. An affiant acts with reckless disregard for the truth when he "in fact entertained serious doubts as to the truth of his allegations." *Id.* (citations omitted). At the suppression hearing, Henry attempted to show that the informant could not have been at Henry's apartment on July 4, 1986, because Henry was at a barbecue. Henry presented no evidence whatsoever to show that Officer Lawton, the affiant, lied about the informant's whereabouts on that date, or that he knew or could have found out whether the informant was at Henry's apartment on July 4. In short, Henry failed to establish that Lawton "in fact entertained serious doubts as to the truth of his allegations." *Id.* Thus, it came as no surprise that the district court concluded that there was no predicate for any finding of known falsity so far as Officer Lawton was concerned and that there was no evidence of reckless disregard by Lawton for the truth. Suppression Hearing Transcript at 78. Instead, the court found that the information contained in the warrant affidavit was correct and that the officers acted appropriately and lawfully. Although we give great deference to the district court's findings, we nevertheless must review the sufficiency of the affidavit under a "totality-of-the-circumstances approach" to determine "whether, given all

the circumstances in the affidavit ..., there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *McKinney,* 919 F.2d at 408.

The citizen informant supplied the information contained in the affidavit. He told the police that a convicted felon named Stanley Henry lived at a particular address, that he possessed guns, and that he had pointed a loaded revolver at the informant. The police verified as much of this information as possible. The informant's criminal check for convictions turned up clean. The officers confirmed Henry's identity, address, and criminal background, including a 1978 conviction for armed robbery. Contrary to Henry's assertions, the record establishes that these acts of verification were not a sham. Based on their independent corroboration, the officers believed that the facts supplied by the informant were a reliable indicator of criminal activity. This information provided the judge issuing the warrant with sufficient reason to conclude that a search would uncover evidence of a crime. In light of what the district court deemed the officers' "appropriate professional manner," Suppression Hearing Transcript at 77, the denial of Henry's motions was not clearly erroneous. The affidavit provided a substantial basis to support the issuance of the search warrant based on probable cause. For the same reason, the trial court did not err in denying Henry's post-trial motion for a new trial.

■ We also find no error in Henry's twenty-year prison term. Henry claims that he should not have been sentenced pursuant to the Armed Career Criminal Act of 1984, originally codified at 18 U.S.C. app. § 1201 ("ACCA"), because he was charged and convicted pursuant to 18 U.S.C. app. § 1202(a). He argues that the ACCA establishes a separate crime of possession of a firearm by one who has three previous felony convictions and that he never was convicted of this separate, more serious offense. This appeal marks the first time

that Henry has raised this argument. Arguments not made in the district court are waived on appeal absent a showing of plain error. *See* Federal Rule of Criminal Procedure 52(b); *United States v. Smith*, 869 F.2d 348, 356 (7th Cir.1989). For there to be plain error, there must have been such a miscarriage of justice that, but for the error, Henry would have been acquitted. *See United States v. Silverstein*, 732 F.2d 1338, 1349 (7th Cir.1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985). Because there has been no miscarriage of justice here, we deem the argument waived.

■ Henry's argument would fail even if it had been raised before this appeal. Section 1202(a) originally was enacted as Title VII of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. app. § 1202, and provides that any convicted felon who receives, possesses, or transports a firearm in commerce or affecting commerce shall be fined not more than $10,000 or imprisoned for not more than two years, or both. The ACCA added the following language to the end of section 1202(a):

> In the case of a person who receives, possesses or transports in commerce or affecting commerce any firearm and who has three prior convictions by any court referred to in paragraph (1) of this subsection for robbery or burglary, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under this subsection, and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

The statute was repealed effective 180 days after May 19, 1986. The substantive crime was incorporated into 18 U.S.C. § 922, and the enhancement provision was incorporated into 18 U.S.C. § 924 by the Firearms Owner's Protection Act of 1986, Pub.L. No. 99–308, §§ 102(6), 104(a)(4) (100 Stat. 449, 452, 458).

Eight circuits (including ours) have held that the three additional convictions provision does not create a separate federal offense, but merely serves to enhance the penalty. *See generally, Note, The Armed Career Criminal Act: Sentence Enhancement Statute or New Offense?*, 56 Fordham L.Rev. 1085 (1988). In *United States v. Lowe*, 860 F.2d 1370 (7th Cir.1988), *cert. denied*, 490 U.S. 1005, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989), a case noticeably absent from Henry's brief, we unequivocally stated that section 924(e)—the reconstituted version of section 1202(a)—does not create a separate federal offense. We will not repeat *Lowe's* extensive analysis of the language and legislative history of the statute, but to summarize, we pointed out that section 924(e) and its antecedent section 1202(a) bear all the common indicia of sentence enhancement provisions. Congress enacted the ACCA to get career criminals off the streets. To this end, it fashioned the ACCA to function like a recidivist statute—that is, the statute ups the penalty ante only after the defendant has been convicted of the substantive offense. *See United States v. Dickerson*, 857 F.2d 414, 417 (7th Cir.1988) (the language prescribes a specific punishment for recidivists), *cert. denied*, 490 U.S. 1023, 109 S.Ct. 1753, 104 L.Ed.2d 189 (1989). The three additional robbery or burglary convictions are not elements of a distinct section 1202(a)(1) offense that must be proven to a jury. Instead, they are taken into account by the court only for purposes of sentencing. *United States v. Karlin*, 852 F.2d 968, 972 (7th Cir.1988), *cert. denied*, 489 U.S. 1021, 109 S.Ct. 1142, 103 L.Ed.2d 202 (1989); *United States v. Pirovolos*, 844 F.2d 415, 420 (7th Cir.) ("the statute clearly makes possession of weapons by all convicted felons a single offense, with additional convictions relevant only for sentencing"), *cert. denied*, 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988). Because of Henry's three prior convictions, the sentencing court properly directed a stiffer punishment.

■ Continuing on the sentencing theme, Henry attacks the basis for his enhanced sentence: the convictions them-

selves. For a conviction to count for enhancement purposes, it must have been constitutionally obtained. *United States v. Gallman*, 907 F.2d 639, 642 (7th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1110, 113 L.Ed.2d 219 (1991) (citations omitted). Once the government has shown that a defendant has three prior convictions for burglary or robbery, the burden rests with the defendant to show that a particular conviction was unconstitutional. *Id.* at 643. Henry argues that his 1973 and 1975 convictions should not be counted as predicate offenses for the enhancement provisions of section 1202(a)(1) because the convictions resulted from guilty pleas that were not voluntarily and intelligently given. (Henry does not attack the validity of his 1978 conviction.) He contends that the transcripts of the proceedings at which he pleaded guilty to the 1973 and 1975 charges demonstrate that he neither chose to plead guilty nor understood the full consequences of his actions, and that he was "railroaded through the system." Appellant's Brief at 22. The district court disagreed. It applied the standard for voluntariness set forth in various court opinions, including *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), and *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), and concluded that the pleas were made voluntarily, knowingly, and intelligently. *United States v. Henry*, 713 F.Supp. 1182, 1192 (N.D.Ill.1989).

For our part, we start with the proposition that a guilty plea is voluntary "when it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of the plea." *Brady*, 397 U.S. at 755, 90 S.Ct. at 1472. A valid guilty plea should represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). In *Boykin*, the Supreme Court identified three fundamental rights that a defendant surrenders in pleading guilty, the surrender of which the defendant must be apprised: the privilege against compulsory self-incrimination, the right to a jury trial, and the right to confront one's accusers. 395 U.S. at 242–43, 89 S.Ct. at 1712. In addition, the record affirmatively must disclose that the defendant entered the plea understandingly and voluntarily. *Id.* A waiver of these rights will not be presumed from a silent record, *id.* at 243, 89 S.Ct. at 1712, but if the defendant's intelligent awareness can be reasonably inferred from the transcript or the custom and practice of the court, the plea passes constitutional muster. *Gallman*, 907 F.2d at 644.

In accepting Henry's 1973 and 1975 pleas, neither trial court admonished Henry as to all three of the fundamental rights particularized in *Boykin*. Nevertheless, the district court found that Henry's pleas were "invulnerable to constitutional attack," *Henry*, 713 F.Supp. at 1192, because the constitution does not require the specific admonitions listed in *Boykin* as a condition precedent to the validity of a guilty plea. To reach this conclusion, the court observed that five years after *Boykin*, the Supreme Court proposed an amendment to Federal Rule of Criminal Procedure 11 to prescribe the kind of admonition that should be given to a federal defendant as a precondition to a guilty plea. The proposed amendment stated that a court could comply with *Boykin's* mandate merely by explaining to defendants that they have the right to plead guilty and that, if they plead guilty, they waive the right to trial. In other words, a court need not comply with *Boykin* literally. All a court need do to give the constitutionally required minimum warnings is to comply with the more general language of the Supreme Court's proposal. Several other circuits similarly agree that the failure to advise a defendant of each right enumerated in *Boykin* does not automatically invalidate the plea. *See, e.g., Neyland v. Blackburn*, 785 F.2d 1283, 1287 (5th Cir.), *cert. denied*, 479 U.S. 930, 107 S.Ct. 399, 93 L.Ed.2d 352 (1986); *Pitts v. United States*, 763 F.2d 197, 200 (6th Cir. 1985); *United States v. Freed*, 703 F.2d 394, 395 (9th Cir.1983), *cert. denied*, 464 U.S. 839, 104 S.Ct. 131, 78 L.Ed.2d 126 (1983).

■ Whatever shortcomings there were in Henry's plea proceedings were insufficient to result in a fundamental miscarriage of justice. First, regarding Henry's 1973 plea, the transcript reveals that Henry was given a copy of the information charging him with robbery. The court explained both the charge and the potential penalty, and went through, as the district court noted, a "thorough" exposition of Henry's rights. *Id.* at 1189. The court explained both the charge and the potential penalty. In addition, the court advised Henry of his constitutional rights, but failed to mention his privilege against self-incrimination. This omission was not fatal because the court advised Henry that, by pleading guilty, he was waiving his constitutional right to trial by jury, his right to confront and cross-examine witnesses, and his right to indictment by a grand jury. We held in *United States v. Dorszynski,* 484 F.2d 849, 851 (7th Cir.1973), *rev'd on other grounds,* 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974), *cert. denied,* 424 U.S. 977, 96 S.Ct. 1483, 47 L.Ed.2d 747 (1976), that when a court advises the defendant that by pleading guilty he is waiving his rights to trial by jury and to confront the witnesses against him, "a ritualistic question to a defendant asking if he understands that he is waiving his right against self-incrimination" is unnecessary. Henry responded that he understood his rights and wished to waive them, and that he had received no threats or promises. The factual basis for the plea was set forth on the record and Henry stipulated to it as true and accurate. Based on the totality of the circumstances, the 1973 plea was both voluntary and intelligent, particularly in light of the fact that Henry had ample exposure to the workings of the criminal justice system. *See Marshall v. Lonberger,* 459 U.S. 422, 437, 103 S.Ct. 843, 852, 74 L.Ed.2d 646 (1983). Between 1970 and 1973, he had nine arrests and three convictions.

■ The transcript of Henry's 1975 plea proceeding shows that the admonitions he was given, although not perfect, were undeniably adequate as well. The court receiving the plea explained the charge and the possible penalty to Henry. The court warned Henry that, by pleading guilty, he was giving up his right to trial and his right to confront and cross-examine witnesses. Henry acknowledged that he understood. In response to the court's inquiry as to whether he had been threatened or given any promises to induce him to plead guilty, Henry responded "No." The court found that Henry "has been duly warned of the consequences of his plea, and after having been so warned, persists." Transcript of 1975 Plea Proceedings at 9. The factual basis for the plea was set forth on the record and Henry stipulated to it as true and accurate. After sentencing Henry, the court advised him of his right to withdraw his guilty plea within thirty days and go to trial. True, the court failed to admonish Henry as to his right to plead not guilty and the right to be free from compulsory self-incrimination. As in the case of the 1973 plea, however, the failure to follow *Boykin* to the letter by specifically admonishing Henry of these rights does not invalidate the plea. Moreover, as the district court noted, it would have been absurd to invalidate Henry's guilty plea on the basis that he was unaware of his right to plead not guilty. He had to have been aware of that right because he was changing his plea from not guilty to guilty.

■ We note as well that both the 1973 and 1975 plea proceedings followed the requirements of the State of Illinois' rule governing guilty pleas. *See* Ill.Rev.Stat. ch. 110A, para. 402 (1970). As the district court noted, Rule 402 "closely parallels the United States Supreme Court's proposed version of the federal rule." *Henry,* 713 F.Supp. at 1190. Literal compliance is not required. *People v. Lee,* 33 Ill.App.3d 45, 48, 337 N.E.2d 381, 383 (1st Dist.1975). All that is required is "substantial compliance," and Illinois courts have interpreted that phrase to mean that "the remarks and advice of the court must be read in a practical and realistic manner. The essentials have been complied with if an ordinary person in the circumstances of the accused would understand them as conveying the information required by the rule." *People v. Krantz,* 58 Ill.2d 187, 193, 317 N.E.2d

559 (1974), *overruled by People v. Wills,* 61 Ill.2d 105, 330 N.E.2d 505 (1975) (to the extent that an admonishment must be given with regard to mandatory parole terms). In sum, then, the district court's finding that Henry's 1973 and 1975 pleas substantially complied with Rule 402 was not clearly erroneous.

 As a last-ditch effort. Henry also raises the inevitable ineffective assistance of counsel claim. It, too, fails. *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984), sets out a two-prong test for ineffective assistance of counsel claims, including guilty plea challenges based upon ineffective assistance of counsel. In order to prevail, Henry must demonstrate that his attorney's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that but for his attorney's unprofessional errors, the results of the proceeding would have been different. *Hill v. Lockhart,* 474 U.S. 52, 57–58, 106 S.Ct. 366, 369–70, 88 L.Ed.2d 203 (1985); *United States ex rel. Partee v. Lane,* 926 F.2d 694, 700 (7th Cir.1991). This Henry cannot do. In connection with his 1973 plea, he states that he met with his public defender only once for approximately ten to fifteen minutes before he went to court, and that he told him that he was innocent. According to Henry, the lawyer didn't want to listen and told Henry that he had to plead guilty or the codefendants "couldn't get the deal." Henry painted his 1975 plea as another situation in which he unwittingly went along with his attorney. Henry claims that he first saw his attorney in court, so that he never met with him to discuss a defense. He alleges that his attorney told him that pleading guilty was the way to go because Henry was unlikely to win at trial and that if he pleaded guilty he probably would be sentenced to time served. According to Henry, he did not comprehend what was happening, so he just answered "yes" to all the judge's admonitions. The burden remains on the defendant to overcome "the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466

U.S. at 689, 104 S.Ct. at 2065; *United States ex rel. McCall v. O'Grady,* 908 F.2d 170, 173 (7th Cir.1990). Henry has failed to meet the burden of showing that his counsel's performance fell below an objective level of reasonable conduct. There is no evidence in the records of either proceeding to reflect ineffective assistance. The fact that Henry had an extensive criminal background and received a sentence of five years' probation for his 1973 plea and a prison sentence of a year and a day for his 1975 plea, demonstrates as well as anything that his attorneys followed a reasonable course of action.

 Henry also claims that he received ineffective assistance of counsel in connection with his 1973 and 1975 plea proceedings due to the fact that his attorneys had conflicts of interest by representing Henry's codefendants. Joint representations are not *per se* unconstitutional. *See McCall,* 908 F.2d at 172. In order for Henry to prevail, it is incumbent upon him to demonstrate "with a reasonable degree of specificity," that a conflict actually existed. *United States ex rel. Robinson v. Housewright,* 525 F.2d 988, 994 (7th Cir. 1975) (quoting *United States v. Mandell,* 525 F.2d 671, 677 (7th Cir.1975), *cert. denied,* 423 U.S. 1049, 96 S.Ct. 774, 46 L.Ed.2d 637 (1976)). Henry argued to the district court that his denial of guilt should have put his attorneys on notice of the existence of a conflict. This argument fails to come close to establishing the "reasonable degree of specificity" needed to show that a conflict actually existed. Nothing in the records of either guilty plea proceeding suggests that Henry's attorneys were faced with an actual conflict of interest. Thus, we will not disturb the district court's finding that Henry failed to overcome the presumption of attorney competence.

For the above reasons, Stanley Henry's conviction and sentence are hereby AFFIRMED.