**UNITED STATES of America**

v.

**Kevin GENTRY.**

**No. 91 CR 134–1.**

United States District Court,
N.D. Illinois, E.D.

Jan. 2, 1992.

Pamela Pepper, Chicago, Ill., for U.S.

Paul Wagner, Chicago, Ill., for Kevin Gentry.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

### Background

On March 19, 1991, Defendant Kevin Gentry and four codefendants, were indicted in a nine-count indictment which charged Gentry, among other things, with possessing a firearm after having been convicted of a felony, a violation of 18 U.S.C. § 922(g)(1).[1] Gentry pled guilty on June 10, 1991 to violating 18 U.S.C. § 922(g)(1). The maximum sentence for violations of § 922(g)(1) is ten years in prison and a $250,000 fine unless the statutory enhancement provided in 18 U.S.C. § 924(e)(1) applies. Section 924(e)(1) is a so-called "three-time loser" law. It imposes a minimum sentence of fifteen years in prison on persons convicted under § 922(g)(1) who have previously been convicted three or more times for "violent felonies" or "serious drug offenses."[2]

The government is seeking to have Gentry's sentence enhanced pursuant to 18 U.S.C. § 924(e)(1) because at a hearing in 1989, Gentry pled guilty to three separate indictments of burglary under Maine law. In his plea agreement with the government, under which he pled guilty to violating § 922(g)(1), Gentry reserved his right to challenge the applicability of the § 924(e) enhancement. Accordingly, Gentry has moved to preclude the government's invocation of the § 924(e) enhancement.

Gentry offers several arguments to support his motion challenging the applicability of the § 924(e) enhancement. He argues that his three prior convictions do not qualify as "violent felonies" under § 924(e), that his three prior burglary convictions in Maine were the product of constitutionally infirm guilty pleas and that a change in the sentence enhancement provision when applied to Gentry would be an *ex post facto* law.

Kevin Gentry's motion is denied.

### Discussion

A. *Gentry's Prior Convictions Were Convictions For "Violent Felonies"*

██ The sentence enhancement statute, 18 U.S.C. § 924(e), applies only if Gentry's

1. 18 U.S.C. § 922(g)(1) provides:
   It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

2. 18 U.S.C. § 924(e)(1) provides:
   In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provisions of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

prior convictions in the State of Maine were for "violent felonies." § 924(e)(2)(B)(ii) defines "violent felony" as follows:

As used in this subsection, the term 'violent felony' means any crime punishable by imprisonment for a term exceeding one year ... that is *burglary,* arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another. (emphasis supplied).

On November 14, 1989, Kevin Gentry pled guilty to three separate indictments in state court in Alfred, Maine. The docket numbers corresponding to the three indictments were 88–1162, 89–024 and 89–412. Under 88–1162, Gentry pled guilty to five counts of burglary and five counts of theft. Under both 89–024 and 89–412, Gentry pled guilty to one count of burglary and one count of theft.

The government's position is that the burglary counts to which Gentry pled guilty constitute violent felonies under § 924(e) and that the sentence enhancement should therefore apply. Gentry maintains, however, that his guilty plea in case 88–1162 was not a guilty plea to a "violent felony" because he did not actually break into and enter the buildings in question and because the Maine prosecutor only had evidence to prove that he served as a "lookout."[3]

18 U.S.C. § 924(e)(2)(B)(ii), quoted above, includes burglary within the definition of a violent crime. The different states define the criminal offense of "burglary" in widely divergent ways, however. Michigan, for example, has no offense formally labelled "burglary." Instead its criminal code includes a provision prohibiting various grades of "breaking and entering." By contrast, under Texas's criminal code, theft from a coin-operated vending machine falls within the definition of "burglary." *See Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 2154, 109 L.Ed.2d 607 (1990).

Cognizant of the various state definitions of "burglary," the Supreme Court has ruled that "burglary" in 18 U.S.C. § 924(e)(2) has a uniform definition independent of the labels employed by the various States' criminal codes. *Id.* Therefore, the mere fact that Gentry was convicted for crimes labelled "burglaries" by the State of Maine does not mean that he has committed "violent felonies" for purposes of the sentence enhancement statute.

In *Taylor,* the Court held that "burglary" in § 924(e)(2) means the "generic sense in which the term is now used in the criminal codes of most States." *Id.* 110 S.Ct. at 2158. The Court elaborated:

[T]he generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into or remaining in a building or other structure, with intent to commit a crime.

\* \* \* \* \* \*

We conclude that a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.

*Id.* (footnote omitted).

The Supreme Court in *Taylor* did not address the question of whether one who aids and abets another in the commission of a generic burglary is himself accountable for generic burglary. This court concludes that one who aids and abets the commission of a generic burglary by serving as lookout has committed generic burglary. It is a basic principle of criminal law that "a person is party to an offense ... if he assists in the actual commission of the offense or of any act which forms a part thereof...." 22 C.J.S., Criminal Law, § 127. *See also* Model Penal Code, § 2.06(2)(c) (accomplice is legally accountable for the criminal conduct of the person he helps). The modern statutory trend is to abolish all distinctions between classes of parties to criminal offenses and regard all persons concerned in the commission of

---

3. Gentry does not dispute that his convictions under 89–024 and 89–412 were convictions for "violent felonies" within the meaning of 18 U.S.C. § 924(e).

a crime as accountable as principals. *See* 22 C.J.S., Criminal Law, § 129.

The recent decision by the Second Circuit in *United States v. Hathaway,* 949 F.2d 609 (2d Cir.1991), confirms the court's conclusion that one who serves as lookout during the commission of generic burglary has himself committed generic burglary. In *Hathaway,* the Second Circuit held that Vermont's arson statute, which included a prohibition against "counseling, aiding or procuring the burning," coincided with "generic arson" under 18 U.S.C. § 924(e).

In determining whether a conviction was a conviction for "generic burglary," the Supreme Court first directs courts to the statute under which the defendant was convicted. "If the state statute is narrower than the generic view, ... there is no problem, because the defendant has been found guilty of all the elements of generic burglary. And if the defendant was convicted of burglary in a State where the generic definition has been adopted, with minor variations in terminology, then the trial court need find only that the state statute corresponds in substance to the generic meaning of burglary." *Id.* 110 S.Ct. at 2158.

Gentry pled guilty to five counts of burglary in Case 88–1162. Maine's burglary statute, to which he pled guilty, provided:

> A person is guilty of burglary if he enters or surreptitiously remains in a structure, knowing that he is not licensed or privileged to do so, with the intent to commit a crime therein.

Me.Rev.Stat.Ann. tit. 17A, § 401. Maine's statutory definition of burglary may have been expanded by judicial interpretation, however. In *State v. Jackson,* 317 A.2d 814 (Me.1974) the Supreme Judicial Court of Maine unanimously upheld a conviction under a now-repealed burglary statute of a man whose sole involvement with the crime was that he served as "lookout."

Maine's burglary statute, even after expansion by *Jackson,* is either narrower than or coextensive with "generic burglary" which, as discussed above, encompasses "aiding and abetting" generic burglary. This court concludes therefore that Gentry's conviction in case 88–1162 was a conviction for the "violent felony" of generic burglary.

**B. *Gentry's Guilty Pleas Were Voluntarily And Intelligently Made***

1. Legal Standard

Gentry also argues that his three prior convictions are constitutionally infirm because they were obtained by means of guilty pleas which were not voluntarily and intelligently rendered and that therefore § 924(e) should not apply.[4] The court's review of the record of the plea colloquy in Maine reveals, however, that Gentry's guilty pleas were in fact legally entered.

■ For a conviction to count for enhancement purposes under § 924(e), it must have been constitutionally obtained. *See United States v. DeForest,* 946 F.2d 523 (7th Cir.1991). Once the government has shown that a defendant has three prior violent felony convictions pursuant to § 924(e)(1), the burden is upon the defendant to show that no more than two of the prior convictions were constitutionally obtained. *See United States v. Ferguson,* 935 F.2d 862 (7th Cir.1991).

■ The test for determining whether a defendant's guilty plea is valid is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985). In applying that test courts must consider all of the relevant circumstances surrounding the plea and must decide whether or not to accept the plea based on the totality of the circumstances. *See United States v. Henry,* 933 F.2d 553, 560 (7th Cir.1991). The Seventh Circuit "start[s] with the proposition that a guilty plea is voluntary 'when it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of his plea.'" *Id.*

---

4. Gentry's three convictions were entered in Maine on November 14, 1989. All three matters were disposed of at the same plea colloquy and sentencing, and therefore any challenge Gentry has made with regard to one of these convictions is applicable to all three of the convictions.

at 559, quoting *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970).

■ The Supreme Court has further stated that to ensure that a guilty plea has been voluntarily and intelligently entered, the defendant should be expressly apprised that he is waiving a trio of constitutional rights.

> Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and made applicable to the States by reason of the Fourteenth Amendment. Second, is the right to trial by jury. Third, is the right to confront one's accusers.

*Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969). The Seventh Circuit has recently held that the defendant need not be expressly advised of his waiver of each of these *"Boykin* rights" if the totality of the circumstances nonetheless demonstrates that the plea is voluntary and intelligent. In *Henry,* the Seventh Circuit upheld the validity of a criminal defendant's guilty plea even though the sentencing court failed to advise the defendant of his privilege against self-incrimination. In *United States v. Colston,* 936 F.2d 312 (7th Cir.1991), the Circuit upheld a guilty plea even though the criminal defendant was never advised that he was waiving his right to confront witnesses.

Other specific factors for the court to consider in its review of the totality of the circumstances include whether the defendant was competent, whether he understood the nature of the charges against him and whether he was represented by competent counsel. *Brady v. United States,* 397 U.S. 742, 756, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747 (1970).

2. The Maine Judge Adequately Informed Gentry of His Rights

On November 14, 1989, Kevin Gentry entered the guilty pleas which led to his three burglary convictions. The transcript of the plea colloquy is 35 pages long and contains an elaborate presentation by the judge of the rights that Gentry was waiving. Judge Delahanty advised Gentry of the all three of the *Boykin* rights plus a number of others. Gentry was advised that he did not have to plead guilty, Tr. 6, that he had a right to go to trial on each of the charges, *id.,* that he had a right to remain silent, *id.,* that he had a right to stop at any time to confer with his attorney, *id.,* that a guilty plea would result in a conviction against him, *id.* at 7, that he had a right to choose between a bench and a jury trial, *id.,* that he would have a right to counsel throughout a trial, *id.* at 8, that his attorney would have the right to cross-examine witnesses, *id.,* that he had a right to insist that the state prove its case beyond a reasonable doubt, *id.,* that he had a right to testify and call witnesses, *id.,* and that he had a right to appeal if he were found guilty, *id.* at 9.

Gentry was also asked if he was pleading freely and voluntarily to which he replied affirmatively. *Id.* at 10. The judge advised Gentry that the maximum total penalty for all three convictions could be as much as 35 years in prison and $15,000 to $20,000 in fines. Gentry stated that he understood the penal consequences of his guilty pleas. *Id.* at 12. In addition, Gentry was advised of what the state would prove were the cases to go to trial, *id.* at 12–18. After hearing the recitation of the evidence that the state would muster against him, Gentry expressed his view that the jury "could" believe those facts and that if the jury did believe them he would "most probably" be found guilty. *Id.* at 19. Finally, the record also indicates that Gentry had entered into a plea agreement with the Maine district attorney's office. *Id.* at 4.

After having heard the state's presentation of the evidence against him and after having been apprised of his *Boykin* and other rights, Gentry was asked by the judge, "[D]o you think entering pleas of guilty to all of these matters is in your best interest?" He answered, "Yes, I do." *Id.* at 19–20.

### 3. Gentry Was Competent to Plead Guilty

■ The court, upon review of the record, finds that Gentry was competent to make the guilty plea. Although Gentry was a 19 year old high school drop-out with a drug problem at the time of the plea, the record reveals that the sentencing judge was aware of those concerns and addressed them adequately. *Id.* at 22–24. The judge also was cognizant of the fact that Gentry had no prior experience with the criminal justice system. *Id.* Attorneys for both the state and Gentry advised the Maine court that Gentry had a drug problem and that he was undergoing a drug treatment program. There was no indication that Gentry was under the influence of drugs at his plea or was otherwise rendered incompetent to make a voluntary and knowledgeable waiver of his rights. In his affidavit attached to his motion, Gentry fails to aver that his youth, his inexperience with the criminal justice system, or his drug problem made him incompetent to enter the guilty pleas.

This case is unlike *United States ex rel. Miller v. McGinnis*, 774 F.2d 819, 825 (7th Cir.1985), a case in which the Seventh Circuit took into consideration the criminal defendant's youth in determining that the totality of the circumstances rendered the plea unconstitutional. In *Miller*, the court that accepted the plea failed to inform the 17 year-old first-time offender of certain of his *Boykin* rights. The Maine court, by contrast, scrupulously advised Gentry of the panoply of rights he was waiving in pleading guilty.

### 4. Gentry Was Not Represented By Incompetent Counsel

■ Gentry's motion intimates that he did not receive effective assistance of counsel. Gentry avers in his affidavit that his attorney did not discuss career offender and habitual offender statutes with him and that she did not discuss with him the procedures in court or the law regarding his case. Gentry further states that she did not tell him whether it would be possible for him to plead guilty to fewer than all the burglaries charged even though she told him that she thought he could beat some of the charges at trial.

To prove ineffective assistance of counsel, Gentry must overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). In order to defeat the presumption, Gentry "must demonstrate that his attorney's representation fell below an objective standard of reasonableness, and that there is a reasonable probability that but for his attorney's unprofessional errors, the results of the proceeding would have been different." *United States v. Henry*, 933 F.2d 553 (7th Cir. 1991) (citing *Hill v. Lockhart*, 474 U.S. 52, 57–58, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985)).

Nothing in Gentry's motion, however, suggests that "but for" his attorney's errors, "the results of the proceeding would have been different." *Id.* In *United States v. Jordan*, 870 F.2d 1310 (7th Cir. 1989), the Seventh Circuit rejected a similar argument that a criminal defendant's guilty plea was not valid because of ineffective assistance of counsel. In *Jordan*, the court noted that the defendant received a relatively lenient sentence in exchange for the guilty plea and that it was implausible that the attorney's alleged failings constituted a "but for" cause of accepting the plea. The same is true with respect to Kevin Gentry's plea. The Maine prosecutor recommended a light sentence for the seven burglary and seven theft counts he was charged with: two years in prison with all but sixty days suspended and the opportunity to return home to Illinois.

Finally, to prove the ineffective assistance of counsel, the Seventh Circuit requires Gentry to provide evidence beyond his own bare allegations. "In order to establish that his counsel failed to inform him of the possibility of federal prosecution, [the defendant] must provide some proof of his claim." *Id.* at 1318. *See also United States v. Ferguson*, 935 F.2d 862, 867 (7th Cir.1991); *Cf. United States ex*

*rel. Healey v. Cannon,* 553 F.2d 1052, 1055 (7th Cir.), *cert. denied,* 434 U.S. 874, 98 S.Ct. 221, 54 L.Ed.2d 153 (1977) (defendant supported his allegation with statements from his father, who witnessed the misinformation, and from his attorney who admitted to giving erroneous advice). Gentry has failed to proffer evidence necessary to overcome the presumption that his Maine attorney offered reasonable assistance.

### 5. Gentry Was Fully Advised of the Consequences of a Guilty Plea

■ Kevin Gentry was made aware of the consequences of a guilty plea. As discussed above, Judge Delahanty outlined in detail all the rights Gentry would be waiving in pleading guilty.

Gentry argues, however, that because the judge failed to inform him that his burglary convictions might later be used against him, he did not make an informed decision to plead guilty. The judge did warn Gentry in general terms that his convictions would haunt him for some time. He informed Gentry:

> [T]hese matters of burglary and theft, especially with the number of them that you have, are going to follow you for quite sometime. Whether you can put this matter behind you and stay out of future trouble is going to be totally up to you.

Tr. 25.

According to the Seventh Circuit, Judge Delahanty was not required to give any warning whatsoever. While the Supreme Court has held that a guilty plea is voluntary when the defendant has been made aware of the direct consequences of his plea, *see Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970), the Seventh Circuit has ruled that possible future federal prosecutions stemming from the guilty plea are *not* direct consequences of the plea. *See Jordan,* 870 F.2d at 1317 (upholding plea in state court even though defendant was not informed that the state conviction would subject him to criminal liability under a federal career criminal statute); *See also United States v. Long,* 852 F.2d 975 (7th

Cir.1988). Consequently, Gentry can not successfully challenge his plea on the grounds that he was not apprised that the plea could enhance the sentence he might receive should he commit a federal crime sometime in the future.

### 6. Organization of the Plea Colloquy

■ The most disturbing aspect of the plea colloquy is that the judge asked Gentry to plead to the twelve counts of the three indictments at the very beginning of the plea hearing. This occurred *before* Gentry has been advised of the rights that he would be forgoing if he pled guilty, including the right against self-incrimination. Only after Gentry said the word "guilty" twelve separate times did the court caution him that he had the right to remain silent.

Although it was highly irregular of the court to cause Gentry to say the word "guilty" at the outset of the plea hearing, a full reading of the record demonstrates that doing so did not amount to a "fundamental defect which inherently result[ed] in a complete miscarriage of justice." *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962). The transcript makes plain that the court did not consider Gentry's utterances of "guilty" at the beginning of the colloquy as constituting his plea. The judge did not accept the plea until Gentry was advised of his rights and of the consequences of pleading guilty, after asking Gentry several times again whether he truly intended to plead guilty. Tr. 12, 20. Gentry was given every reasonable opportunity by the judge to enter the type of plea he wished to.

Finally, Gentry suggests that he actually never did plead guilty to the charges against him after being informed of his rights and advised of the consequences of the plea. The plea colloquy, taken in its entirety, demonstrates that Gentry did indeed admit his guilt after being properly advised of his rights and the consequences. After advising Gentry of his *Boykin* and other rights, and after advising him that he did not have to plead guilty and that he had a right to trial, the judge asked, "And are

you still willing to go forward?" Gentry answered, "Yes." Tr. 9. Later, the court asked, "Are you pleading guilty freely and voluntarily?" and Gentry answered, "Yes." Tr. 10. After telling Gentry that a guilty plea could lead to 35 years in prison, the court asked, "Are you still willing to go forward?" and Gentry again responded, "Yes." Tr. 12.

Those questions and answers make clear that Gentry did admit to his guilt. The fact that immediately prior to actually accepting the guilty plea, the judge asked Gentry whether he thought pleading guilty was "in his best interest," rather than asking Gentry if he was guilty, does not amount to a "fundamental defect which inherently result[ed] in a complete miscarriage of justice." *Hill*, 368 U.S., at 428, 82 S.Ct., at 471.

### 7. Summary

In sum, the court concludes that Gentry failed to meet his burden of proof that his guilty pleas in Maine were not voluntarily and intelligently made. The court so concludes based on a review of the totality of the circumstances.

### C. *Amendment to § 924(e) When Applied to Gentry is Not an Ex Post Facto Law*

■ According to the first Maine indictment (88–1162), Gentry committed five burglaries between August 4–13, 1988. The second indictment (89–024) charges him with one burglary on November 7, 1988. The third indictment (89–412) charges him with a final burglary on December 4.

On November 18, 1988, the underlined words were added to 18 U.S.C. § 924(e)(1) by Public Law 100–690:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court ... for a violent felony ... *committed on occasions different from one another*, such person shall not be ... imprisoned less than fifteen years.

The additional language was to clear up a dispute among the circuits. Some circuits had held that a defendant is subject to the enhanced penalty, regardless of the number of adjudications, as long as each conviction arises out of a distinct criminal episode. Others had held that courts should count the number of adjudicated separately even if more than one distinct criminal episode was tried at the same trial.

Gentry points out that Congress did not add the clarifying language until *after* he had committed six burglaries listed in the earlier two indictments. He then argues that because those first six burglaries would probably have been adjudicated together under Maine law, *see* Me.Rev.Stat. tit. 17A, § 14, the clarifying language should not be applied to those burglaries to treat them as separate offenses for the purposes of the enhancement provision. Rather, the first six burglaries should be lumped together as a single adjudication of burglary. His conviction based on the December 4, 1988 indictment (after the change in the law) would have given him a second conviction, one short of that required for sentence enhancement.

*United States v. Jordan*, 870 F.2d 1310 (7th Cir.1989) defeats Gentry's argument. In *Jordan*, the defendant committed his three prior violent felonies before the enhancement statute was ever enacted. He was convicted of the precursor to § 922(g)(1) after the enhancement penalty was enacted. The Seventh Circuit ruled that the enhancement provision did not make more onerous the punishment for crimes committed before its enactment, because the enhancement provision did not increase the punishment for the three prior convictions. Rather, it imposed a stiffer penalty on the felon-in-possession crime, which had occurred after the enactment of the enhancement provision. The same would be true here with respect to the amendment to § 924(e).

### Conclusion

Kevin Gentry's motion to preclude the government's use of Gentry's prior convictions for sentence enhancement purposes is denied.