**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Sean Robert MULLOY, Defendant–**
**Appellee.**

No. 92–30451.

United States Court of Appeals,
Ninth Circuit.

Argued July 16, 1993.

Submission deferred July 16, 1993.

Resubmitted July 23, 1993.

Decided Sept. 2, 1993.

Gene Porter, Asst. U.S. Atty., Seattle, WA, for plaintiff-appellant.

Thomas W. Hillier, II, Asst. Federal Public Defender, Seattle, WA, for defendant-appellee.

Before CANBY, WIGGINS, and T.G. NELSON, Circuit Judges.

CANBY, Circuit Judge:

The United States appeals from a sentence imposed upon Sean Robert Mulloy after a jury convicted him of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). The district court refused to enhance Mulloy's sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). It found after an evidentiary hear-

ing that two of the four prior violent felony convictions that the government had offered for enhancement were constitutionally invalid. Because we conclude that intervening Supreme Court authority suggests that the district court may have improperly allocated the burden of proof, we vacate the sentence and remand for resentencing.

The ACCA requires Mulloy to receive an enhanced sentence if he has been convicted of at least three prior violent felonies. *See* 18 U.S.C. § 924(e)(1). Mulloy raises no challenge to two of his four prior violent felony convictions. We consider de novo whether either one of the two remaining convictions, a 1974 Washington strong-arm robbery offense, and a 1989 Washington second-degree burglary offense, may serve as the third predicate offense under the ACCA. *United States v. Potter,* 895 F.2d 1231, 1235 (9th Cir.), *cert. denied,* 497 U.S. 1008, 110 S.Ct. 3247, 111 L.Ed.2d 757 (1990). We review the district court's fact findings for clear error. *See United States v. Butcher,* 926 F.2d 811, 817 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2273, 114 L.Ed.2d 724 (1991).

*The 1974 Conviction*

■ The district court refused to consider the 1974 conviction because it found that Mulloy had not been advised of his right against self-incrimination. We have consistently required that the record affirmatively disclose that a defendant entered his plea intelligently and voluntarily. *E.g., United States v. Freed,* 703 F.2d 394, 395 (9th Cir.), *cert. denied,* 464 U.S. 839, 104 S.Ct. 131, 78 L.Ed.2d 126 (1983). That standard, in turn, derives from *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). *Boykin* identified reversible error in a trial court's acceptance of a guilty plea without having created a record that affirmatively showed the plea to be knowing and voluntary. *Id.* at 242, 89 S.Ct. at 1711–12. That

showing depends in part upon a valid waiver of the right against self-incrimination. *Id.* at 243, 89 S.Ct. at 1712.

■ The Supreme Court indicated recently, however, that the "presumption of invalidity" with which *Boykin* approached a silent or ambiguous record of a prior conviction is inapplicable on collateral review. *Parke v. Raley,* —— U.S. ——, ——, 113 S.Ct. 517, 523, 121 L.Ed.2d 391 (1992). The Court explained:

> To import *Boykin*'s presumption of invalidity into this very different context would, in our view, improperly ignore another presumption deeply rooted in our jurisprudence: the "presumption of regularity" that attaches to final judgments, even when the question is waiver of constitutional rights.

*Id.* The precise issue presented in *Parke* was the constitutionality of a state procedure for determining the constitutional validity of prior convictions on collateral attack. *Id.* —— U.S. at ——, 113 S.Ct. at 520. That procedure allocated burdens of production and proof to the petitioner. *See id.* Despite its narrow holding, *Parke* strongly hints that the presumption of regularity upon which it relied to uphold the state scheme applies to the collateral review of any prior conviction. *See id.* —— U.S. at ——, 113 S.Ct. at 523.[1]

Taking the hint, we conclude that *Parke* creates a presumption that Mulloy intelligently and voluntarily pleaded guilty to strong-arm robbery in 1974. The government is correct that Mulloy cannot satisfy his burden of proving the constitutional invalidity of the 1974 conviction, *see United States v. Newman,* 912 F.2d 1119, 1121 (9th Cir.1990), (involving the Sentencing Guidelines) merely by pointing to a silent or ambiguous record.[2] We must not forget, however, that *Parke*

---

1. *See also Marshall v. Lonberger,* 459 U.S. 422, 437, 103 S.Ct. 843, 852, 74 L.Ed.2d 646 (1983) (when a defendant is represented by counsel upon pleading guilty, the plea is presumed valid in a habeas proceeding).

2. Mulloy contends that if the defendant points to a silent record, the burden shifts to the government to prove the constitutional validity of the prior convictions. He relies on *United States v.*

*Pricepaul,* 540 F.2d 417, 423–24 (9th Cir.1976), and *United States v. Goodheim,* 651 F.2d 1294, 1299 (9th Cir.1981). To the extent that these cases support Mulloy's proposition, they have been undermined by *Parke'*s ruling that the *Boykin* presumption of invalidity arising from a silent record does not apply on collateral review. *Parke,* —— U.S. at ——–——, 113 S.Ct. at 523–24.

creates only a presumption of regularity. An affirmative showing *by the defendant* that the prior conviction is invalid[3] overcomes the presumption and bars the use of that conviction for sentence enhancement under the ACCA.

█ The government argues that the district court relied in part on the silence of the record to invalidate the prior conviction, and that, in effect, the court imposed the burden of proof on the government. Mulloy argues that the government was not required to assume any burden; Mulloy produced all of the evidence of infirmity of the conviction, and the district court was convinced by that evidence. The written findings and conclusions of the district court lend some support to each view.

The district court, which did not have the benefit of the *Parke* decision when it ruled, recited the *Boykin* rule that "the record must show that the defendant intentionally relinquished rights that were known to him." It then held that "[t]here is insufficient evidence in the record of the 1974 conviction to support a finding that the defendant knew of and voluntarily waived his right against compulsory self-incrimination." The government argues from these statements that it is clear that the district court laid the consequences of a silent record at the government's door, contrary to the presumption of regularity endorsed by *Parke*.

These statements of the district court do support the government's contention, and convince us that we must vacate the sentence and remand for further proceedings because the court seems to have read the partial silence of the record to the government's disadvantage. The effect was to place the burden of showing validity of the convictions on the government, contrary to *Parke's* presumption of regularity.

█ We do not, however, rule for the government outright because other portions of the record and decision of the district court

lend support to Mulloy's view that he established affirmatively the invalidity of the 1974 conviction.

In the first place, Mulloy did not simply point to a silent record; he presented a considerable amount of evidence concerning the circumstances of his 1974 conviction, even though no transcript could be produced. From the evidentiary hearing we know that Mulloy, who was nineteen years old at the time, was arraigned, pleaded guilty, and was sentenced for strong-arm robbery all in one hearing on the same day. We also know that he signed a preprinted statement upon entering his guilty plea. That statement explicitly informed Mulloy of his right to counsel, to trial by jury, to confront hostile witnesses and to call friendly ones, and to be convicted only upon a finding of guilty beyond a reasonable doubt. The form failed to mention Mulloy's right against compulsory self-incrimination. That fact alone is sufficient to differentiate Mulloy's case from *Parke*, where the Supreme Court observed that "[t]his is not a case in which an extant transcript is suspiciously 'silent' on the question whether a defendant waived constitutional rights." *Parke*, —— U.S. at ——–——, 113 S.Ct. at 523–24.

The attorney who prosecuted Mulloy in 1974 testified at the evidentiary hearing that it was unlikely that the state judge discussed anything with Mr. Mulloy that was not on the preprinted form. Mulloy's defense counsel, who was apparently a last-minute substitute, could not remember advising Mulloy of his right against compulsory self-incrimination.

Upon the presentation of this evidence by Mulloy, the district court found, "based on all the evidence, that Mr. Mulloy was not advised of his right against compulsory self-incrimination." The district court then ruled that, "[c]onsidering all the circumstances, the Court cannot conclude from the 1974 record that Mr. Mulloy understood that he was

---

**3.** We need not determine with precision in this case the standard of proof required to overcome the presumption of regularity. *See, e.g., United States v. Day,* 949 F.2d 973, 982 (8th Cir.1991) (defendant must show by a preponderance of evidence that his prior convictions cannot be used for enhancement under the ACCA); *see also Newman,* 912 F.2d at 1124 (preponderance standard applies generally to defendant's burden of establishing invalidity of prior conviction under the Guidelines).

waiving that right when he entered his guilty plea."

 Although these statements of the district court may still rely in part on the silence of the record, they also are open to the interpretation that, if Mulloy had been properly assigned the burden of establishing the invalidity of his conviction, he might have carried it.[4] We do not know how the district court, informed by *Parke*, would have ruled on the crucial factual question whether Mulloy knew of his right against self-incrimination and intelligently waived it.[5] Because we are unable to determine with certainty the validity of the 1974 conviction under a proper allocation of the burden of proof, we remand that question to the district court for determination in the first instance.

*The 1989 Conviction*

 Similar problems are presented with regard to the 1989 conviction. That conviction was entered upon a stipulation of facts entered by Mulloy and the prosecution. We apply a more lenient standard for determining the constitutional validity of a conviction obtained upon stipulated facts than the standard we apply to a conviction based on a guilty plea. *See Adams v. Peterson*, 968 F.2d 835, 841, 843 (9th Cir.1992) (en banc), *cert. denied,* —— U.S. ——, 113 S.Ct. 1818, 123 L.Ed.2d 448 (1993). As with the 1974

conviction, the findings and conclusions of the district court concerning Mulloy's 1989 conviction may be interpreted in more than one way.

 The district court had before it the full transcript of the 1989 proceedings. The proceedings began as a hearing on Mulloy's motion to suppress evidence and, after that motion was denied, stipulations of fact were submitted and Mulloy was found guilty. Mulloy and the government agree that there were no recorded colloquies or written documents to establish that Mulloy understood the stipulated fact procedure and that he agreed to be subjected to it. The prosecutor submitted an affidavit stating that he did not advise the defendant of any rights, and the defense counsel's affidavit stated that he did not recall doing so. Defense counsel also stated that there usually is a written waiver in cases of stipulated trials, but that the record contained none and he found none in his files.

On that showing by Mulloy, the district court quite accurately stated that "[t]here is no evidence from which the Court can conclude that Mr. Mulloy agreed to a stipulated facts trial." This statement suggests that the silent portions of the record may have been read against the government. On the other hand, the absence of any colloquy or

---

4. We reject the government's contention that the state court's advice of other rights sufficed to inform Mulloy of his right against self-incrimination. Nothing in the list of rights that was recited implicitly suggested that Mulloy had a right against self-incrimination that he was waiving. *Compare United States v. Young*, 979 F.2d 1280, 1281 (8th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1604, 123 L.Ed.2d 166 (1993) (advice that defendant had a right "to have a trial" was sufficient to notify defendant of right to *jury* trial). We have not adopted the view that notice of the rights to jury trial and to confront witnesses makes unnecessary "a ritualistic question to a defendant asking if he understands that he is waiving his right against self-incrimination." *United States v. Dorszynski*, 484 F.2d 849, 851 (7th Cir.1973), *rev'd on other grounds*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974) (cited approvingly in *United States v. Henry*, 933 F.2d 553, 560 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1703, 118 L.Ed.2d 412 (1992)). *But see Fruchtman v. Kenton*, 531 F.2d 946, 948 (9th Cir.), *cert. denied*, 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976) (where trial judge

interrogated defendant before accepting guilty plea, notice to defendant that he was waiving rights to jury trial and to "compel the Government to prove ... guilt by competent evidence" cured failure to notify defendant of his right to confrontation and to compulsory process).

5. Mulloy argues that it is clear that the district court would have ruled for him, because the district court noted the dispute over burden of proof and stated that "under either the government or the defendant's interpretation of that burden the Court's conclusion is the same." We do not view this statement as conclusive, however, because the district court elsewhere indicated that the defendant's burden may be met by showing that the record was silent regarding Mulloy's waiver of the right of self-incrimination. ("There is insufficient evidence in the record of the 1974 conviction to support a finding that the defendant knew of and voluntarily waived his right against compulsory self-incrimination."). As we have explained above, that assessment of Mulloy's burden is inconsistent with *Parke*.

written waiver relating to the rights given up under the stipulated facts procedure, and the testimony of the attorneys, support in part Mulloy's contention that he established that he never intelligently agreed to the stipulated facts "trial."

■ The government contends, however, that there is convincing evidence that Mulloy was informed of the operation and effect of the procedure in a separate proceeding for assault. He apparently was advised of his constitutional rights in connection with his plea of guilty to the assault charge immediately after the conclusion of his stipulated facts trial. Both proceedings were before the same judge. The government argues that there was sufficient "spillover" effect to validate the burglary conviction. *See, e.g., United States v. Stewart*, 977 F.2d 81, 85 (3d Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1433, 122 L.Ed.2d 800 (1993) (citing *United States v. Henry*, 933 F.2d 553, 560 (7th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1703, 118 L.Ed.2d 412 (1992); and *United States v. DeForest*, 946 F.2d 523, 526 (7th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1235, 117 L.Ed.2d 469 (1992)). We do not accept the government's argument. The cases upon which it relies each involve a finding that a defendant's experience in a *prior* proceeding defeated his constitutional challenge to a subsequent conviction. *See Stewart*, 977 F.2d at 85; *Henry*, 933 F.2d at 560; *DeForest*, 946 F.2d at 526.[6] Here the government asks us to discern that Mulloy intelligently and voluntarily agreed to the stipulated fact "trial" on the basis of information apparently given him after he had been subjected to the procedure. We are unwilling to go that far.

We are left, then, with the same situation that we faced with regard to the 1974 conviction. We do not know how the district court, treating silences of the record in the manner required by *Parke*, would have ruled on the question whether Mulloy knew of the rights he was giving up in the stipulated facts "trial," and intelligently waived them. We

therefore remand this matter as well to the district court for determination in the first instance.

*Conclusion*

The district court, not having the benefit of the *Parke* decision at the time of sentencing, appears to have held the partial silence of the record of prior convictions against the government. That ruling runs counter to *Parke's* presumption of regularity to be applied when convictions are attacked in collateral proceedings. We therefore vacate the sentence and remand for resentencing.

Neither the record nor the district court's findings establish, however, that Mulloy could not sustain his burden of establishing the invalidity of both convictions if that burden were placed upon him. We leave that question to the district court; we impose no instructions and indicate no opinion regarding the appropriate outcome.

**SENTENCE VACATED; REMANDED FOR RESENTENCING.**

---

**6.** The Seventh Circuit in *DeForest* applied this reasoning with respect to a pre-*Boykin* plea. *DeForest*, 946 F.2d at 526. The court hesitated to apply the same concept to a post-*Boykin* plea.

The court did not decide whether the post-*Boykin* plea was valid because the requisite number of predicate offences had already been established. *See id.* at 527.